423 S.E.2d 217

**STATE of West Virginia ex rel. O.C. SPAULDING, Prosecuting Attorney for Putnam County, Relator,**

v.

**Honorable Clarence L. WATT, Judge of the Circuit Court of Putnam County, and Mark J. McClelland, Respondents.**

No. 21304.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 2, 1992.

Decided Sept. 17, 1992.

Mark A. Sorsaia, Asst. Pros. Atty. of Putnam County, Winfield, for relator.

Gregory J. Campbell, Charleston, for respondent Mark J. McClelland.

MILLER, Justice:

This is an original proceeding in prohibition. On July 21, 1992, we issued a rule, returnable on September 2, 1992. This proceeding represents the second time in recent months that these parties have appeared before this Court. The relator asks us to order the respondent, the Honorable Clarence L. Watt, Judge of the Circuit Court of Putnam County, to revoke the post-conviction bail of Mark J. McClelland.

In March of 1990, Mr. McClelland was convicted of nine counts of sexual assault in the first degree involving his five-year-old stepdaughter and his seven-year-old stepson. Mr. McClelland subsequently filed a motion for a new trial on the basis of newly discovered evidence. In November of 1991, the trial court granted that motion, and Mr. McClelland was freed on post-conviction bail.

Thereafter, the State sought a writ of prohibition in this Court to prevent the new trial. We granted the writ, holding that there was insufficient evidence to warrant a new trial and that the trial court had exceeded its legitimate powers in granting the motion. *State ex rel. Spaulding v. Watt*, 188 W.Va. 96, 422 S.E.2d 818 (1992).[1]

The State subsequently brought a motion before the circuit court to revoke bail on

---

1. In Syllabus Point 2 of *State ex rel. Spaulding v. Watt, supra,* we stated the legal basis for the writ of prohibition:

"'The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.' Syllabus point 5, *State v. Lewis,* [188 W.Va. 85, 422 S.E.2d 807]."

the ground that W.Va.Code, 62–1C–1(b) (1983), precludes a circuit court from granting post-conviction bail where the crime involves "the use of violence to a person."[2] A hearing was held on July 17, 1992, at which time the motion was denied. The State then brought this original proceeding in prohibition to compel the trial court to revoke Mr. McClelland's post-conviction bail.

Mr. McClelland argues that the circuit court was not precluded from granting him bail because he was not convicted of a crime involving violence to a person. In particular, Mr. McClelland was convicted of first degree sexual assault pursuant to W.Va.Code, 61–8B–3(a)(2) (1984), which provides:

"(a) A person is guilty of sexual assault in the first degree when:

＊　　＊　　＊　　＊　　＊　　＊

"(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less."

Unlike the crime of first degree sexual assault defined in W.Va.Code, 61–8B–3(a)(1) (1984),[3] the offenses of which Mr. McClelland was convicted do not require proof of forcible compulsion. Instead, the gist of the crime is the child's presumed incapacity to consent to sexual intercourse or sexual intrusion.[4] However, both offenses are felonies which carry a penalty of imprisonment in the penitentiary for a term of not less than fifteen nor more than twenty-five years. W.Va.Code, 61–8B–3(b) (1984).[5]

Mr. McClelland asserts that because the State prosecuted him under W.Va.Code, 61–8B–3(a)(2) (1984), and was not required to show forcible compulsion or physical violence in the commission of the offense, he has not been convicted of a crime of violence to a person. The State contends that even if there was no physical injury to the victim, the very nature of the crime of sexual assault against young children results in severe emotional and psychological damage which constitutes violence.

W.Va.Code, 62–1C–1(b), precludes the trial court from granting post-conviction bail "where the offense is punishable by life imprisonment or ... [where] the offense was committed or attempted to be committed with the use, presentment or brandishing of a firearm or other deadly weapon, *or by the use of violence to a person* [.]"

2. W.Va.Code, 62–1C–1(b), states:
   "Bail may be allowed pending appeal from a conviction, except that bail shall not be granted where the offense is punishable by life imprisonment or where the court has determined from the evidence at the trial or upon a plea of guilty or nolo contendere that the offense was committed or attempted to be committed with the use, presentment or brandishing of a firearm or other deadly weapon, or by the use of violence to a person: Provided, That the denial of bail under one of these exceptions may be reviewed by summary petition to the supreme court of appeals or any justice thereof, and the petition for bail may be granted where there is a likelihood that the defendant will prevail upon the appeal. The court or judge allowing bail pending appeal may at any time revoke the order admitting the defendant to bail."

3. W.Va.Code, 61–8B–3(a)(1) (1984), provides:
   "A person is guilty of sexual assault in the first degree when:
   "(1) Such person engages in sexual intercourse or sexual intrusion with another person and, in so doing:
   "(i) Inflicts serious bodily injury upon anyone; or

"(ii) Employs a deadly weapon in the commission of the act[.]"

4. W.Va.Code, 61–8B–2 (1984), provides:
   "(a) Whether or not specifically stated, it is an element of every offense defined in this article that the sexual act was committed without the consent of the victim.
   "(b) Lack of consent results from:
   "(1) Forcible compulsion; or
   "(2) Incapacity to consent; or
   "(3) If the offense charged is sexual abuse, any circumstances in addition to the forcible compulsion or incapacity to consent in which the victim does not expressly or impliedly acquiesce in the actor's conduct.
   "(c) A person is deemed incapable of consent when such person is:
   "(1) Less than sixteen years old; or
   "(2) Mentally defective; or
   "(3) Mentally incapacitated; or
   "(4) Physically helpless."

5. In 1991, after the date of the crimes in this case, the statute was amended to increase the penalty to imprisonment for not less than fifteen nor more than thirty-five years. *See* W.Va.Code, 61–8B–3(b) (1991).

(Emphasis added). This provision allows this Court to review, by summary petition, the denial of bail in the circuit court under the foregoing restrictions.[6]

In *State v. Steele*, 173 W.Va. 248, 314 S.E.2d 412 (1984), we discussed the procedure for obtaining post-conviction bail in this Court under W.Va.Code, 62–1C–1(b). We recognized that under the statute the trial court was prohibited from granting post-conviction bail in the enumerated circumstances. However, we did not address the meaning of the phrase "by the use of violence to a person" in *Steele* or in any subsequent case.

It appears that our post-conviction bail statute is unique. Statutes in other jurisdictions which preclude bail in certain circumstances fall into three general categories. One category of statute provides a list of specific crimes for which post-conviction bail is not authorized.[7] The second type of statute conditions an award of post-conviction bail upon the length of the sentence imposed.[8] Finally, there is a hybrid statute which determines whether bail is authorized by looking at both a list of specific crimes and the severity of the sentence imposed.[9] *See generally* Annot., 28 A.L.R.4th 227 (1984) (right of defendant to bail pending appeal).

Perhaps as a result of the specificity of bail statutes in other jurisdictions, we have not encountered a case which discusses the meaning of "violence to a person" in the context of post-conviction bail exclusions. However, the California courts have addressed a similar issue in the context of a sentence enhancement statute. In *People v. Hetherington*, 154 Cal.App.3d 1132, 201 Cal.Rptr. 756 (1984), the court considered a statute which provided for an enhanced sentence upon conviction of a "violent felony." The statute defined the term "violent felony" as including sexual acts against children under the age of fourteen. The

defendant was convicted under the portion of the child molestation statute which did not require proof of forcible compulsion.

In determining whether this was a violent felony for purposes of the enhancement statute, the court in *Hetherington* initially focused on the interplay between these statutes. The court held that the legislature had expressly stated in the enhancement statute that " 'these specified crimes merit special consideration when imposing a sentence to display society's condemnation for such *extraordinary crimes of violence against the person*.' (Italics added.)" 154 Cal.App.3d at 1139–40, 201 Cal.Rptr. at 760. The court then analyzed the phrase "violence against the person" to determine whether the enhancement statute applied only to crimes involving physical violence:

> "We consider it significant that the statute refers simply to 'violence' rather than to 'physical violence,' 'physical injury' or 'bodily harm.' The statute's unadorned language indicates the Legislature intended to impose increased punishment ... not only for certain felonies which are 'violent' in a physical sense but also for other selected felonies which cause extraordinary psychological or emotional harm." 154 Cal.App.3d at 1140, 201 Cal.Rptr. at 760.

*See also People v. Stephenson*, 160 Cal. App.3d 7, 206 Cal.Rptr. 444 (1984) (child molestation a violent felony).

There is, we believe, sound logic to this reasoning. As in *Hetherington*, the word "violence" in our post-conviction bail statute is not limited by the adjective "physical." There can be no dispute that even in the absence of any significant physical trauma, sexual assaults on young children result in severe emotional and psychological harm.

---

**6.** See note 2, *supra,* for the full text of W.Va. Code, 62–1C–1(b).

**7.** *See* Fla.Stat.Ann. § 903.133 (1992 Cum.Supp.); Miss.Code Ann. § 99–35–115 (1992 Cum.Supp.); Okla.Stat.Ann. tit. 22, § 1077 (1992 Cum.Supp.).

**8.** *See* S.C.Code Ann. § 18–1–90 (Law.Co-op. 1985).

**9.** *See* 18 U.S.C. § 3143(b)(2) (1992 Cum.Supp.); Ga.Code Ann. § 17–6–1(g) (1992 Cum.Supp.); Tex.Crim.Proc.Ann. § 44.04(b) (1992 Cum. Supp.).

Furthermore, we cannot ignore the severe penalty attached to the offense of first degree sexual assault as defined in W.Va.Code, 61–8B–3(a)(2) (1984). The fact that the penalty is the same as that imposed for sexual assault by forcible compulsion demonstrates the legislature's view of the seriousness of the offense.

In summary, we decline to resolve the question presented here solely on the ground that physical violence is not an element of the crimes of which Mr. McClelland was convicted. The fact that the State elected to prosecute first degree sexual assault under W.Va.Code, 61–8B–3(a)(2) (1984), based on the age of the children rather than upon a theory of forcible compulsion, does not mean that the children were not the victims of violence.

For these reasons, we conclude that the offense of first degree sexual assault under W.Va.Code, 61–8B–3(a)(2) (1984), involves "violence to a person" and is, therefore, subject to the provisions of W.Va. Code, 62–1C–1(b), with regard to post-conviction bail.

The trial court exceeded its legitimate powers in denying the State's motion to revoke bail under the circumstances of this case. We, therefore, grant the writ of prohibition prayed for, and direct the respondent judge to revoke Mr. McClelland's post-conviction bail.

Writ awarded.

NEELY, Justice, dissenting:

Mr. McClelland may well be a mean and nasty fellow who is guilty of the distasteful crime of statutory rape of his stepdaughter and his stepson. As I have pointed out before, however, when courts decide "easy" cases such as this one, they make bad law. *See State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903 (1992) (Neely, J., dissenting); *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991) (Neely, J., dissenting). In its holding today, the majority yields to the mass hysteria surrounding today's crime of fashion: sexual abuse of one's own children.

It is a deplorable fact that transgressions which used to be considered immoral are now shrugged off as not that important: drug use, promiscuity, marital infidelity, abandoning one's family, divorce for light or transient causes, and bearing children out of wedlock. We are no longer "judgmental" about these moral lapses; we merely provide "treatment" whenever the social services lobby can get a transgression covered by Medicaid. Sexually abusing one's own children is truly the only moral offense left that *shocks* us.

It is true that in some cases, perhaps even this one, parents or step-parents do indeed molest their children. However, the hysteria surrounding this crime has grown beyond imagination. From the Elizabeth Morgan—Eric Foretich case in the Washington, D.C., area [1] to the celebrated accusations of Mia Farrow against Woody Allen surrounding their seven-year-old child Dylan, to the frequency of such charges in divorce actions today,[2] the mere *accusa-*

---

1. In the Morgan–Foretich dispute, Ms. Morgan accused Mr. Foretich of sexually abusing their child. After a trial in which Foretich was acquitted of such charges, Ms. Morgan sent her parents into hiding with the child. Ultimately, they landed in Christchurch, New Zealand, where they remained undiscovered until the grandparents attempted to register the child for school. Ms. Morgan was cited for contempt of court and jailed until she would divulge the whereabouts of the child. She refused and stayed in prison for approximately two years. Public sentiment was on Ms. Morgan's side, and Congress passed a law limiting the time one could be held for civil contempt to eighteen months. Accordingly, Ms. Morgan was released from jail. The child was located by private detectives hired by the father.

Despite the fact that a criminal court acquitted Mr. Foretich of all charges; the fact that the domestic relations court awarded Mr. Foretich visitation rights; and the fact that the source of the charges was Elizabeth Morgan's father's dislike of Mr. Foretich, Mr. Foretich has sustained permanent damage to his reputation. A movie is currently being produced glorifying Ms. Morgan's illegal behavior which will serve only further to degrade the reputation of an apparently innocent man.

2. Today, it is *de rigueur* in a hostile child custody battle to level this type of sexual abuse charge. Indeed, it would almost be attorney malpractice not to level such a charge judging by the frequency and success of such charges, whether proven.

*tion* of sexual abuse instantaneously produces a stain that mars the reputation of the accused whether, indeed, the accused even committed the offense. Thus, like witchcraft of yesteryear, today's sexual abuse is a showstopper. There is no way to disprove the accusation of sexual abuse to the complete satisfaction of the public.

Indeed, like witchcraft, child sexual abuse charges can seldom be proven conclusively one way or the other. There is certainly no way to *disprove* such an accusation unless the accused was absent beyond the seas during the entire relevant period. However, proving such an accusation is equally difficult. Traditionally, courts have developed the rules of evidence and presumptions of innocence in order to protect us all from unjust accusation and unfounded convictions. However, we have also had a disturbing willingness to set aside these rules when we "know" what really is going on. In Salem, Massachusetts, in 1695, they relaxed the burden of proof for witchcraft to mere tales told by children about how they dreamed someone was trying to steal their souls.[3] Even more disturbing was the way the U.S. Supreme Court gave in to mass hysteria during World War II and ratified the interment of Japanese Americans solely because of their ancestry in *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Such cases do little to inspire confidence in the rule of law.

In yielding to the mass hysteria surrounding the charges of sexual abuse of children, we have lowered the standards of proof in order to obtain convictions at the expense of justice. For example, in *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992), the majority required the normal standard of proof, expert qualifications of the examining and treating physician, and

full and fair cross-examination of witnesses, in order to prove physical injuries. However the "expert" psychological testimony (the damning evidence in the case where the "expert" testified that the assaults actually occurred) was not given the same level of scrutiny:

> On the other hand, the "expert psychological" testimony was provided by Ms. Pamela Rockwell, a sexual assault counselor with a bachelor's degree. Ms. Rockwell testified from her meetings with the victims that their behavior was consistent with having been sexually assaulted. *However, she did not inquire into the children's backgrounds concerning other possible causes for their behavior; she did not talk to their teachers; and she did not talk to anyone who knew them before the assaults. She also testified that in her line of work she is basically an advocate for victims.* This is ridiculous! [Emphasis original]

*State v. Delaney*, 187 W.Va. 212, 218, 417 S.E.2d 903, 909 (1992) (Neely, J., dissenting). Yet the majority commanded that such evidence was indeed admissible, and now such unreliable evidence has become the fuel that drives our system toward convictions and away from impartial adjudication according to ancient, time-tested criteria for truth-finding.[4]

The majority, with today's decision, has perverted a statute grotesquely simply to add additional punishment to a crime of fashion. *W.Va.Code*, 62–1C–1(b) [1983] is designed to give judges discretion about bail pending a post-conviction appeal. However, the legislature opted to withdraw a trial court's authority to grant post-conviction bail in a *limited* number of circumstances: If the crime is punishable by life

---

3. The unbeliever need only read *Servants of Satan: The Age of the Witch Hunts* by Joseph Klaits, Indiana University Press (1985), or any other historical account of the Salem witch trials (or an accurate literary adaptation, Arthur Miller's *The Crucible* ) for a description of how hundreds of innocent people were put to death on the basis of three children's testimony, which was given because the children had to cover up staying out late.

4. For the record, after reviewing an additional dozen rape and rape trauma cases since *Delaney, supra* in text, was decided, I still adamantly reaffirm my conclusion that "the so-called rape-trauma experts who testify in criminal cases in this State could not be less credible if they wore bones in their noses and prognosticated by throwing colored stones." *Delaney*, 187 W.Va. 212, 218 note 2, 417 S.E.2d 903, 909 note 2 (Neely, J., dissenting).

imprisonment or was committed with a deadly weapon, or by "the use of violence to a person." *W. Va. Code*, 62–1C–1(b) [1983]. Even in those cases, this Court is given the power to allow post-conviction bail, if it deems such bail proper. Clearly, the legislature intended to tighten bail requirements only in a narrow set of cases.

What was the rationale for selecting these cases? Obviously, the purpose of the statute was to keep exceedingly dangerous people off the streets. *W. Va. Code, 62–1C–1(b) was not intended to be punitive, but rather prophylactic.* The legislature made a judgment that people who are *extremely* dangerous *to society at large* should not be given post-conviction bail because of the high-likelihood that they will attack another random, innocent victim. Mr. McClelland did not grab a random woman off the street and threaten her life or beat her; Mr. McClelland did not rob a Seven–Eleven store at gunpoint; and Mr. McClelland did not commit a murder. The majority's attempt to draw the crime of *statutory* rape under the "use of violence" provision perverts the meaning of the statute.[5]

This post-conviction bail statute must be construed narrowly against the state, for bail should not be readily foreclosed. If we hold that "use of violence" under *W. Va. Code*, 62–1C–1(b) [1983] does not cover a conviction of statutory rape, that would not hand Mr. McClelland a get-out-of-jail-free card, but merely would allow the Circuit Court to use his discretion to determine the likelihood of flight and the likelihood of a repeat offense. The legislature has pre-defined exceedingly dangerous cases, but any enlargement of that category must come from legislative deliberation, not from mob psychology.

Just as in *Korematsu*, the majority opinion today is a bending of judicial integrity to the winds of popular opinion. And just like *Korematsu*, future commentators will look back and wonder how a court could ever allow itself to stray so far from its own principles. Accordingly, I dissent.

---

5. The majority places undue reliance on the language of a California statute that explicitly includes statutory rape in its definition of "violent felony" for sentencing purposes. From there, for some unfathomable reason, the majority takes the California legislature's explicit language in a sentencing statute, and attempts to apply it to a post-conviction bail statute passed by the West Virginia Legislature. On second thought, there is a reason for the majority to torture the law in this manner: there is not one shred of legitimate support for the majority's untenable position.