760 S.E.2d 512

STATE of West Virginia, Plaintiff Below, Respondent

v.

GEORGE K., Defendant Below, Petitioner.

No. 12–0433.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 2014.

Decided June 13, 2014.

Cheryl L. Warman, Esq., Morgantown, WV, for the Petitioner.

Patrick Morrisey, Attorney General, Laura Young, Esq., Assistant Attorney General, Charleston, WV, for the Respondent.

BENJAMIN, Justice:

This case is before the Court on appeal by the petitioner, George K., of the February 21, 2012, order of the Circuit Court of Taylor County which found pursuant to W. Va.Code § 27–6A–3(h) (2007) that George K. is not competent to stand trial, that he is not substantially likely to attain competency, and that the charges against him—two counts of third degree sexual assault pursuant to W. Va.Code § 61–8B–5(a)(2) (2000) and two counts of sexual abuse by a custodian pursuant to W. Va.Code § 61–8D–5 (2005)—involve an "act of violence against a person." The circuit court further found that it would maintain jurisdiction over George K. for fifty years, which is the maximum possible sentence he would have received if he had been convicted of the crimes with which he was charged, or until he attains competency and the criminal charges reach resolution. In accordance with these findings, the circuit court ordered that George K. be committed to a mental health facility.

In this appeal, George K. raises one assignment of error: The circuit court erred by finding that the crimes with which he was charged involve an act of violence and therefore by proceeding pursuant to W. Va.Code § 27–6A–3(h). He asserts that the crimes with which he was charged do not involve an act of violence, and that the circuit court should instead have applied W. Va.Code § 27–6A–3(g), thereby dismissing the charges against him and releasing him from custody unless he was subsequently civilly committed. The State argues that the crimes charged involve an act of violence and that the circuit court correctly applied W. Va.Code § 27–6A–3(h).

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of George K. and the State, we conclude that third degree sexual assault under W. Va. Code § 61–8B–5(a)(2) and sexual abuse by a custodian under W. Va.Code § 61–8D–5 are crimes that involve an act of violence within the meaning of W. Va.Code § 27–6A–3. Therefore, the circuit court properly applied

W. Va.Code § 27–6A–3(h), and we affirm the circuit court's order.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

■ On June 7, 2011, the petitioner, George K., was indicted on two counts of third degree sexual assault pursuant to W. Va.Code § 61–8B–5(a)(2) and two counts of sexual abuse by a custodian pursuant to W. Va.Code § 61–8D–5. The acts giving rise to the indictment allegedly occurred in April or May of 2011, and at that time, George K. was thirty nine years old. According to the indictment, George K. had sexual intercourse with the fifteen-year-old daughter of his live-in girlfriend on two separate occasions. George K. counters by asserting that the child was within six weeks of the age of consent at the time of the purported offenses and that she willingly engaged in sexual intercourse with him.[1]

Following George K.'s indictment, his counsel sought to have him evaluated for competency to stand trial. The circuit court ordered a psychiatric evaluation on June 28, 2011. In his report dated July 21, 2011, Dr. William Fremouw determined that George K. had an IQ of 60 and was not at that time competent to stand trial, but that

> Mr. [K.] potentially could learn the basics of the criminal justice system with educational classes with frequent repetition. His ability to make informed choice, however, would be limited by his intelligence. Therefore, even if he could better explain the charges and penalties, his ability to decide strategies would remain very questionable. The Court may wish to send him to Sharpe Hospital [2] for a competency restoration program to determine whether his competence level could be

raised to above the threshold to allow his case to proceed forward.

(Footnote added). Relying on this report, the court found, by order dated August 18, 2011, that George K. was not competent to stand trial. The court ordered that he be committed to Sharpe Hospital so that the doctors could attempt to raise his competency level.

On November 18, 2011, George K. was evaluated again, this time by Dr. Bridgette G. Balasko. In her report dated November 20, 2011, Dr. Balasko opined that "[i]f information can be presented in a way that allows him to make informed choices about his legal issues, he could be restored to competence in the foreseeable future." She also reevaluated his IQ, determining that his IQ was 57. Following this report, by letter dated November 30, 2011, Dr. John King, Associate Clinical Director of Sharpe Hospital, requested that the court extend George K.'s commitment for up to nine months to allow time to help him gain competency. By order dated December 1, 2011, the court granted the request and extended George K.'s commitment to June 19, 2012.

A third psychiatric evaluation of George K. was conducted on February 10, 2012, by Dr. Natalie Wallace. By report of the same date, Dr. Wallace found that George K. "is *not likely* to attain competency in the foreseeable future," stating, "[I]t has become apparent to me that Mr. [K.] does not have the ability to follow the proceedings because of problems with retention, and is not able to participate in his defense because of cognitive limitations." Dr. Cheryl Franc, Clinical Director of Sharpe Hospital, notified the court of Dr. Wallace's findings via letter dated February 16, 2012.

On February 21, 2012, the circuit court held a hearing on George K.'s competency to

---

1. Age of consent is determined by the applicable statute. In this case, the two applicable statutes, discussed *infra,* are W. Va.Code § 61–8B–5 and W. Va.Code § 61–8D–5. Under W. Va.Code § 61–8B–5, the age of consent is sixteen years old. W. Va.Code § 61–8B–2(c)(1) (1984) ("A person is deemed incapable of consent when such person is ... [l]ess than sixteen years old."). Under W. Va.Code § 61–8D–5, the age of consent is eighteen years old. W. Va.Code § 61–8D–5

(stating that a person violates the statute when the victim is a child).

2. William R. Sharpe, Jr. Hospital is a psychiatric facility located in Weston, West Virginia. *See* W. Va.Code § 27–2–1 (2010). The hospital operates under the direction of the West Virginia Department of Health and Human Resources. *Id.*

stand trial. Both counsel for the State and counsel for George K. agreed that he was incompetent to stand trial. The parties disagreed on the proper course of action following a finding of incompetency. George K. argued that the court should proceed pursuant to W. Va.Code § 27–6A–3(g)[3] and dismiss the charges against him. The State argued that W. Va.Code § 27–6A–3(h)[4] should apply, that George K. should be committed, and that the court should retain jurisdiction over him for the length of time specified by the statute. In deciding which subsection to apply, the circuit court answered the threshold question presented by the subsections: Did the charged crimes involve an "act of violence against a person?" The court found

> that Mr. [K.] is charged with four felonies which do involve acts of violence against a person. The court finds that all four of these offenses do involve acts of violence against a person.
>
> The court believes that the case cited [*State ex rel. Spaulding v. Watt*, 188 W.Va. 124, 423 S.E.2d 217 (1992) ] not only talks about physical violence but also talks about emotional harm.

In an order dated February 21, 2012, the circuit court found that George K. was incompetent to stand trial and that he was not likely to gain competency. The court ordered that he be committed to a mental health facility pursuant to W. Va.Code § 27–6A–3(h), finding

> that the Defendant would have been convicted of the following offenses but for the determination that he/she was not competent to stand trial ... [:]
>
> Sexual Assault in the Third Degree, 2 counts
>
> Sexual Abuse by a Parent, Guardian, or Custodian, 2 counts
>
> This Court further FINDS that it maintains jurisdiction over the defendant for fifty (50) years, the maximum possible sen-

tence defendant would have received if he/she had been convicted of the ' crime(s) charges [sic], or until the defendant regains competency....

George K. now appeals the circuit court's February 21, 2012, order committing him under W. Va.Code § 27–6A–3(h).

## II.

### STANDARD OF REVIEW

In this appeal, George K. asks the Court to decide whether W. Va.Code § 61–8B–5(a)(2), which defines third degree sexual assault, and W. Va.Code § 61–8D–5, which defines sexual abuse by a custodian, involve "an act of violence against a person" within the meaning of W. Va.Code § 27–6A–3(h). We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Therefore, we proceed in analyzing the petitioner's assignment of error under a *de novo* standard of review.

## III.

### ANALYSIS

In 1974, the West Virginia Legislature enacted Chapter 27, Article 6A of the West Virginia Code. That article, titled "Competency and Criminal Responsibility of Persons Charged or Convicted of a Crime," sets forth the means by which West Virginia courts should evaluate and proceed with cases involving criminal defendants who are incompetent to stand trial or who are acquitted because of incompetency.

W. Va.Code § 27–6A–3 provides the procedure for determining a criminal defendant's competency to stand trial and the method of disposition of cases in which the defendant is not competent to stand trial.[5] That section

---

**3.** W. Va.Code § 27–6A–3(g) is quoted in full *infra* Part III.

**4.** W. Va.Code § 27–6A–3(h) is quoted in full *infra* Part III.

**5.** The subject matter of W. Va.Code § 27–6A–3—determining competency to stand trial and options for commitment—was codified in W. Va. Code § 27–6A–2 upon the enactment of Chapter 27, Article 6 in 1974. Following its enactment, W. Va.Code § 27–6A–2 was amended in 1979

gives two courses of action for when a criminal defendant is found not competent and unlikely to attain competency:

(g) If at any point in the proceedings the defendant is found not competent to stand trial and is found not substantially likely to attain competency and if the defendant has been indicted or charged with a misdemeanor or felony which *does not involve an act of violence against a person, the criminal charges shall be dismissed.* The dismissal order may, however, be stayed for twenty days to allow *civil commitment proceedings* to be instituted by the prosecutor pursuant to article five [§§ 27–5–1 et seq.] of this chapter. The *defendant shall be immediately released from any inpatient facility* unless civilly committed.

(h) If at any point in the proceedings the defendant is found not competent to stand trial and is found not substantially likely to attain competency, and if the defendant has been indicted or charged with a misdemeanor or felony in which the misdemeanor or felony *does involve an act of violence against a person,* then the court shall determine on the record the offense or offenses of which the person otherwise would have been convicted, and the maximum sentence he or she could have received. A defendant *shall remain under the court's jurisdiction* until the expiration of the maximum sentence unless the defendant attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge. The court *shall order the defendant be committed* to a mental health facility designated by the department that is the *least restrictive environment to manage the defendant and that will allow for the protection of the public.* Notice of the maximum sentence period with an end date shall be provided to the mental health facility. The court *shall order a qualified forensic evaluator to conduct a dangerousness evaluation to include dangerousness risk factors* to be completed within thirty days of admission to the mental health facility and a report rendered to the court

within ten business days of the completion of the evaluation. The medical director of the mental health facility shall provide the court a written clinical summary report of the defendant's condition at least annually during the time of the court's jurisdiction. The court's jurisdiction shall continue an additional ten days beyond any expiration to allow civil commitment proceedings to be instituted by the prosecutor pursuant to article five [§§ 27–5–1 et seq.] of this chapter. The defendant shall then be immediately released from the facility unless civilly committed.

W. Va.Code § 27–6A–3 (emphasis added). Which subsection applies—W. Va.Code § 27–6A–3(g) or W. Va.Code § 27–6A–3(h)—turns on whether the charged crime involves an act of violence against a person.

George K. is charged with committing third degree sexual assault as described in W. Va.Code § 61–8B–5(a)(2) and sexual abuse by a custodian, as described in W. Va.Code § 61–8D–5. W. Va.Code § 61–8B–5, which defines third degree sexual assault, provides in pertinent part:

(a) A person is guilty of sexual assault in the third degree when:

. . . .

(2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

(b) Any person violating the provisions of this section is guilty of a felony. . . .

W. Va.Code § 61–8D–5, which defines sexual abuse by a custodian, states in pertinent part:

(a) . . . If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstand-

and 1998. In 2007, a substantial revision of Chapter 27, Article 6A moved the material that

had previously existed in W. Va.Code § 27–6A–2 to what is presently W. Va.Code § 27–6A–3.

ing the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony. . . .

The circuit court concluded that both of the crimes charged for each act in this case involve an act of violence against a person within the meaning of W. Va.Code § 27–6A–3. Accordingly, the court applied W. Va. Code § 27–6A–3(h). Pursuant to that subsection, the court ordered that George K. be committed to a mental health facility designated by the West Virginia Department of Health and Human Resources.

On appeal, George K. asserts that the circuit court erred by applying W. Va.Code § 27–6A–3(h). He argues that the crimes for which he was indicted did not involve an act of violence. He contends that the phrase "act of violence against a person" as used in W. Va.Code § 27–6A–3 is not a term of art, that it is not ambiguous, and that it should be accorded its plain, everyday meaning. George K. cites Black's Law Dictionary's definition of "violent offense": "A crime characterized by extreme physical force, such as murder, forcible rape, and assault and bat-

tery with a dangerous weapon." Black's Law Dictionary 1408 (5th ed.1979).[6] He avers that because the sexual conduct in which he engaged with the child did not involve the application of force, threats, or physical violence, and because force, threats, compulsion, or physical violence were not elements of the charged crimes, the conduct was not violent within the meaning of W. Va.Code § 27–6A–3. He asserts that pursuant to W. Va.Code § 27–6A–3(g), the court should have dismissed the charges against him and, unless civil commitment proceedings were instituted,[7] the court should have released him from custody after twenty days.

The State disagrees with George K.'s assertion, arguing that his conduct did involve an act of violence within the meaning of W. Va.Code § 27–6A–3. The State posits that third degree sexual assault and sexual abuse by a custodian carry great potential for physical harm and long-term psychological damage to the victim, particularly a child, and it contends that this potential for psychological harm and physical harm constitutes violence within the meaning of W. Va.Code § 27–6A–3. The State relies on *State ex rel. Spaulding v. Watt*, 188 W.Va. 124, 423 S.E.2d 217 (1992), in which this Court found, in the context of a bail statute, that "violence to a person" is not limited by the adjective "physical." [8]

---

**6.** The definition of "violent offense" given in the fifth edition of Black's Law Dictionary is consistent with the definition in the most recent edition of the dictionary. Black's Law Dictionary 1252 (10th ed.2014). *Cf.* Black's Law Dictionary 453 (10th ed.2014) ("[V]iolent crime. [ ] A crime that has as an element the use, attempted use, threatened use, or substantial risk of use of force against the person or property of another.")

**7.** The method for procuring involuntary civil commitment is described in W. Va.Code §§ 27–5–1 to –11. Application for involuntary commitment may be sought pursuant to W. Va.Code § 27–5–2(a) (2008) when

the person making the application [for involuntary hospitalization] has reason to believe that the individual to be examined is addicted, as defined in section eleven [§ 27–1–11], article one of this chapter, or is mentally ill and, because of his or her addiction or mental illness, the individual is likely to cause serious harm to himself, herself or to others if allowed to remain at liberty.

" 'Mental illness' means a manifestation in a person of significantly impaired capacity to maintain acceptable levels of functioning in the areas of intellect, emotion and physical well-being." W. Va.Code § 27–1–2 (1974); *see generally State ex rel. R.S. v. Trent*, 169 W.Va. 493, 502, 289 S.E.2d 166, 172 (1982) ("We are of the opinion that the distinction between a troubled child who exhibits dangerous antisocial behavior which he is unable to control and a child who displays a 'traditional' mental illness may be too subtle to be traced definitively by the judicial mind. We hold that a child who is mentally incapable of conforming his conduct to prescribed legal norms and who cannot restrain himself from committing proscribed antisocial acts, thereby presenting a danger to himself or to others, comes within the definition of 'mental illness' and shall be treated accordingly.").

The duration of involuntary commitment is limited to the time the individual poses a danger to himself, herself, or others, and the commitment must be the least restrictive alternative. W. Va.Code § 27–5–4(k) (2012).

We must first discern the meaning of "violence" within W. Va.Code § 27–6A–3 before we may go on to consider whether the charged crimes involve acts of violence. We observe that the Legislature has not given us any explicit guidance; nowhere in W. Va. Code §§ 27–6A–1 to –11 has the Legislature defined the term "violence."

When there is uncertainty as to the meaning of a statute, the statute must be evaluated to give effect to the intent of the Legislature. Syl. pt. 4, *Mace v. Mylan Pharm., Inc.*, 227 W.Va. 666, 714 S.E.2d 223 (2011) (" ' "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 3, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W.Va. 677, 671 S.E.2d 682 (2008)."). However, " ' "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W.Va. 666, 714 S.E.2d 223 (2011). *See also* syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949).

Despite George K.'s position to the contrary, we believe that the meaning of "violence" within W. Va.Code § 27–6A–3 is ambiguous. Absent an explicit statutory definition, a question exists as to whether an act of violence is limited to only those acts which may cause physical harm or whether an act of violence may also include acts which may cause emotional or psychological harm. Here, the parties' positions reflect each side of the question. In cases such as this, we have held that "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

George K. argues that we must construe W. Va.Code § 27–6A–3 in his favor because the statute is penal in nature. He asserts that the statute is penal "because it deprives [him] of his liberty interest by confining him in a locked institutional setting." We disagree. While George K.'s position that penal statutes must be construed against the State and in favor of the defendant comports with our holding in syllabus point 3 of *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970) ("Penal statutes must be strictly construed against the State and in favor of the defendant."), he has incorrectly evaluated the nature of W. Va.Code § 27–6A–3, overlooking this Court's express pronouncement in *State v. Smith*, 198 W.Va. 702, 713, 482 S.E.2d 687, 698 (1996), that commitment statutes are *not* penal in nature: "The purpose of a commitment statute is not to punish someone suffering a mental illness . . . ." Where a person is incompetent to stand trial, there is no conviction to warrant a punishment. Therefore, the rule requiring the Court to construe penal statutes in favor of the defendant is inapplicable to the present case.[9]

The first step when construing an ambiguous statute is to determine legislative intent. Syl. pt. 1, in part, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("[T]he initial step in such interpretive inquiry is to ascertain the legislative intent."). In determining the Legislature's intent, we are mindful that

that those defendants be committed to the least restrictive environment necessary to treat the defendant while protecting the public.

8. *Spaulding* is discussed in greater detail *infra*.

9. *See infra* discussion regarding W. Va.Code § 27–6A–3(h)—(i), which requires the annual review of committed incompetent defendants and

[a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syl. pt. 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).

■■■■ One method for determining legislative intent involves comparing the ambiguous statute to other portions of the West Virginia Code. Syllabus point 4 of *Community Antenna Service, Inc. v. Charter Communications VI, LLC,* 227 W.Va. 595, 712 S.E.2d 504 (2011), provides that " '[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Pursuant to syllabus point 6 of *Community Antenna Service, Inc.,* "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." (In part) (quoting syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975)). Finally, we note that "[i]t is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used." *W. Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 338, 472 S.E.2d 411, 423 (1996).

George K. argues that this Court can determine the Legislature's intent by reading W. Va.Code § 27–6A–3 in *pari materia* with W. Va.Code § 15–12–2(i) (2012) of the Sex Offender Registration Act, which states:

*For the purpose of this article,* "sexually violent offense" means:

(1) Sexual assault in the first degree as set forth in section three [§ 61–8B–3], article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction;

(2) Sexual assault in the second degree as set forth in section four [§ 61–8B–4], article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction;

(3) Sexual assault of a spouse as set forth in the former provisions of section six [§ 61–8B–6], article eight-b, chapter sixty-one of this code, which was repealed by an Act of the Legislature during the two thousand legislative session, or of a similar provision in another state, federal or military jurisdiction;

(4) Sexual abuse in the first degree as set forth in section seven [§ 61–8B–7], article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction.

(Emphasis and footnote added). George K. contends that only those sex offenses described in W. Va.Code § 15–12–2(i) should be considered to involve an act of violence within the meaning of W. Va.Code § 27–6A–3. We disagree.

■■■■ These statutes cannot be read in *pari materia* for two reasons. First, W. Va. Code § 15–12–2 and W. Va.Code § 27–6A–3 do not relate to the same subject matter. While W. Va.Code § 27–6A–3 relates to the commitment of individuals who are incompetent to stand trial, W. Va.Code § 15–12–2(i) describes who must register as a sex offender pursuant to the Sex Offender Registration Act and the information sex offenders must provide when registering. Because these statutes do not relate to the same subject matter, pursuant to syllabus point 4 of *Community Antenna Service, Inc.* they cannot be read in *pari materia.*

■■■■ Second, the language of W. Va. Code § 15–12–2(i) explicitly limits the definition of "sexually violent offense" to Chapter 15, Article 12. By including that limiting language, the Legislature expressed its obvi-

ous intent that the definition of "sexually violent offense" contained within the Sex Offender Registration Act *not* be applied outside of the Sex Offender Registration Act absent explicit direction to the contrary.[10]

■ Because we cannot glean legislative intent through a comparison of the commitment statute at issue—W. Va.Code § 27–6A–3—with other portions of the Code, our next step in construing the statute is to determine the Legislature's purpose in enacting it. *See* syl. pt. 5, *Snyder,* 64 W.Va. 659, 63 S.E. 385, quoted *supra.* Looking first to the language of Chapter 27, Article 6A, we find that it does not contain an explicit statement as to its purpose. The legislative history also lacks guidance on this point. However, our decision in *Smith* provides direction: In *Smith,* we said that "[t]he purpose of a commitment statute is . . . to treat the illness and protect society." 198 W.Va. at 713, 482 S.E.2d at 698. Therefore, according to *Smith,* there is a dual purpose to W. Va.Code § 27–6A–3: treatment of the individual and protection of the public.

With the purpose of W. Va.Code § 27–6A–3 in mind, we proceed to examine the operation of the "act of violence" language in the statute. With regard to W. Va.Code § 27–6A–3(g) and (h), the determination of whether an incompetent defendant who is unlikely to attain competency has committed an act of violence is the threshold question. The answer to the question governs whether the person will be released from commitment—absent subsequent civil commitment—pursu-ant to W. Va.Code § 27–6A–3(g) or whether that person will be committed for treatment and subjected to further examination to determine his or her dangerousness to himself and others pursuant to W. Va.Code § 27–6A–3(h).

■ If protection of the public is a purpose of the statute, then the reason for determining whether an act of violence against a person has occurred is prospective due to the risk of recurrence. The examination of crimes that have allegedly been committed indicates whether the incompetent defendant poses a *future* risk of harm. Logic dictates that if the Legislature intended these subsections to provide for the protection of the public, then a crime that does not involve an act of violence against a person that therefore allows for the release from supervision of a person deemed incompetent to stand trial pursuant to W. Va.Code § 27–6A–3(g) must necessarily be a crime that does not indicate that the incompetent defendant poses a future risk of harm to the public. Similarly, if the crime warrants commitment pursuant to W. Va.Code § 27–6A–3(h), then the incompetent defendant poses a future risk of harm to the public. Therefore, an "act of violence against a person" within the meaning of W. Va.Code § 27–6A–3 is an act that indicates an incompetent defendant poses a future risk of harm to the public.

The Legislature has not explicitly listed which crimes involve an act of violence against a person within the meaning of W. Va.Code § 27–6A–3.[11] Furthermore, neither

10. The Legislature has explicitly directed that W. Va.Code § 15–12–2(i) be applied to a portion of the Code outside of the Act, W. Va.Code § 61–8B–9(b)(a). Pursuant to W. Va.Code § 61–8B–9b(a), "any person who has been convicted of a sexually violent offense, as defined in section two [§ 15–12–2], article twelve, chapter fifteen of this code . . . and thereafter commits and is thereafter convicted of one of the following offenses shall be subject to . . . penalties. . . ."

The "sexually violent offenses" definition contained within W. Va.Code § 15–12–2(i) and the language referencing that definition in W. Va. Code § 61–8B–9b were in place *before* the last revision to W. Va.Code § 27–6A–3. If the Legislature desired to limit sex crimes involving violence to those listed in W. Va.Code § 15–12–2(i), it could have amended the language of W. Va. Code § 27–6A–3 to say as much, just as it did with W. Va.Code § 61–8B–9b. "[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Williamson v. Greene,* 200 W.Va. 421, 426, 490 S.E.2d 23, 28 (1997) (emphasis omitted) (quoting *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996)).

11. No other state's statute dealing with the commitment of an incompetent defendant conditions commitment on whether the person has committed a misdemeanor or felony that "involve[s] an act of violence against a person." The standards for commitment of incompetent persons unlikely to attain competency vary considerably by state.

W. Va.Code § 61–8B–5 nor W. Va.Code § 61–8D–5 explicitly indicates that an "act of violence" is an element of the crimes of third degree sexual assault or sexual abuse by a custodian, respectively. Therefore, both parties' positions, in part, rely on this Court finding that it is not bound by the explicit elements of the charged crimes. Plainly, if the inquiry is limited to the expressly delineated elements, neither W. Va.Code § 61–8B–5 nor W. Va.Code § 61–8D–5 would involve acts of violence pursuant to W. Va.Code § 27–6A–3.

 Common sense requires us to find that crimes which involve an "act of violence" within the meaning of W. Va.Code § 27–6A–3 are not limited to those crimes explicitly listing an "act of violence" as an element. If the inquiry was strictly limited to the explicitly named elements, many crimes which involve violence but which do not explicitly list an "act of violence" as an element, such as battery,[12] would be excluded from consideration under W. Va.Code § 27–

6A–3 as crimes involving an act of violence against a person. Such a result would be absurd, and would be against the clear purpose of the statute. *See* syl. pt. 2, in part, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925) ("It is ... the duty of a court to disregard a construction [of a statute] ... when such construction would lead to injustice and absurdity."). By including the word "involving," the Legislature has expressed its intent that the analysis expand past considering only crimes listing an "act of violence" as an element. *See In re Murdock,* 730 S.E.2d 811, 814 (N.C.Ct.App.2012). Therefore, we now hold that in determining whether a misdemeanor or felony involves an "act of violence against a person" pursuant to W. Va. Code § 27–6A–3 (2007), a court's analysis is not limited by whether an "act of violence against a person" as an element of the offense.

To determine whether an "act of violence" occurred in this case, we next determine whether an "act of violence against a person"

---

*See, e.g.,* Ky.Rev.Stat. Ann. § 504.110(2) (West 2005) ("If the court finds the defendant incompetent to stand trial but there is no substantial probability he will attain competency in the foreseeable future, it shall conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B."); N.C. Gen.Stat. § 15A–1003 (1987) (stating that when a defendant is found incapable of proceeding due to incompetence and when that defendant would meet the requirements to be committed civilly, the court should order such commitment subject to special considerations for when "the defendant was charged with a violent crime, including a crime involving assault with a deadly weapon"); Md. Code Ann., Criminal Procedure § 3–106(d) (West 2013) (stating that if the court finds that the defendant is incompetent and is not likely to become competent in the foreseeable future, the court may order the civil commitment of the defendant if the court finds, *inter alia,* that the defendant is a danger to self or others); Ohio Rev.Code Ann. § 2945.38 (West 2013) (stating that if the court finds that the defendant is incompetent and is not likely to become competent within a year, "the court shall order the discharge of the defendant," unless upon motion of the prosecutor or on its own motion, the court either seeks to retain jurisdiction over the defendant ... "or files an affidavit in the probate court for the civil commitment of the defendant"); 50 Pa. Stat. Ann. §§ 7403(d), 7406 (1996, 1976) (stating that if a defendant is found incompetent to stand trial and there is not a substantial probability that he will attain capaci-

ty in the foreseeable future, the court shall discharge the person unless "the attorney for the Commonwealth, on his own or acting at the direction of the court, the defendant, his counsel, the county administrator, or any other interested party may petition the same court for an order directing involuntary treatment"); S.C.Code Ann. § 44–23–430(2) (2011) (stating that when a person is unfit to stand trial and is unlikely to become fit to stand trial in the foreseeable future, civil commitment proceedings must be brought pursuant to S.C.Code Ann. §§ 44–17–510 to –610 or S.C.Code Ann. § 44–20–450); Va.Code Ann. § 19.2–169.3 (2013) (requiring commitment of incompetent persons who are unlikely to attain competency when those persons have committed certain offenses detailed in Va.Code Ann. § 37.2–900 (2009)).

12. W. Va.Code § 61–2–9(c) (2004) describes the elements of battery:

If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor....

"Violence" is not an element of the crime, yet battery involves the application of force causing harm. *See* Black's Law Dictionary 182 (10th ed.2014) ("[B]attery ... [is] [t]he nonconsensual touching of, or use of force against, the body of another with the intent to cause harmful or offensive contact.").

within the meaning of W. Va.Code § 27–6A–3 is limited to those acts which may cause physical harm, as the petitioner argues, or whether the harm from such acts may also be psychological or emotional, as the State argues. Our holding in *State ex rel. Spaulding v. Watt*, 188 W.Va. 124, 423 S.E.2d 217 (1992), is instructive.

In *Spaulding*, the Court interpreted the meaning of "violence to a person" within the section of the Code outlining conditions for bail, W. Va.Code § 62–1C–1 (1983). 188 W.Va. at 124–25, 423 S.E.2d at 217–18. That section states, in relevant part, "Bail may be allowed pending appeal from a conviction, except that bail shall not be granted where . . . the court has determined . . . that the offense was committed or attempted to be committed . . . by the use of violence to a person." W. Va.Code § 62–1C–1(b).

The proceeding before the Court in *Spaulding* arose from the State's motion for a writ of prohibition to compel the trial court to revoke the defendant's post-conviction bail. 188 W.Va. at 124–25, 423 S.E.2d at 217–18. The State argued that the crime with which the defendant was charged—first degree sexual assault of his five- and seven-year-old stepchildren—involved "violence to a person" under W. Va.Code § 62–1C–1(b). *Id.* W. Va.Code § 61–8B–3(a) (1984), which defines first degree sexual assault, stating that

a person is guilty of sexual assault in the first degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person and, in so doing:

(i) Inflicts serious bodily injury upon anyone; or

(ii) Employs a deadly weapon in the commission of the act; or

(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.[13]

(Footnote added). The Court found that "the State elected to prosecute . . . based on the age of the children rather than upon a theory of forcible compulsion." *Id.* at 127, 423 S.E.2d at 220.

The question before the Court in *Spaulding* was whether "violence to a person" within the meaning of W. Va.Code § 62–1C–1 was limited to acts involving forcible compulsion. In reaching its decision, the Court examined *People v. Hetherington*, 154 Cal. App.3d 1132, 201 Cal.Rptr. 756 (Cal.Ct.App. 1984), which involved a sentence enhancement statute containing language similar to W. Va.Code § 62–1C–1. *Id.* at 126, 423 S.E.2d at 219. The sentence enhancement statute included the phrase "violence against the person." *Id.* In construing the sentence enhancement statute to determine whether the phrase applied only to crimes involving physical violence, *Hetherington* concluded that crimes causing extraordinary psychological or emotional harm are violent within the meaning of the sentence enhancement statute. *Id.*[14]

The *Spaulding* Court applied the reasoning used in *Hetherington* to evaluate the meaning of "violence to a person" within W. Va.Code § 62–1C–1. *Id.* The Court determined that "the word 'violence' in our post-conviction bail statute is not limited by the adjective 'physical.'" *Id.* at 126, 423 S.E.2d at 219. The Court reasoned, "There can be no dispute that even in the absence of any significant physical trauma, sexual assaults on young children result in severe emotional and psychological harm." *Id.* The Court concluded that first degree sexual assault, even in the absence of forcible compulsion, involves "violence to a person" within the meaning of

**13.** The language of W. Va.Code § 61–8B–3(a) has been amended slightly since the version in force in 1984. The most notable change is to subsection (a)(2) which now states, "The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is *younger than twelve years old and is not married to that person.*" W. Va.Code § 61–8B–3(a)(2) (2006) (emphasis added). These

changes do not affect the efficacy of the analysis conducted by the Court in *Spaulding*.

**14.** Federal sentencing guidelines specifically list statutory rape as a "crime of violence" for purposes of sentence enhancement. U.S. Sentencing Guidelines Manual § 2L1.2 (2012) (defining "crime of violence" in application note (1)(B)(iii)).

W. Va.Code § 62–1C–1. *Id.* at 127, 423 S.E.2d at 220.

The post-conviction bail statute examined in *Spaulding*, W. Va.Code § 62–1C–1, is similar to the statute at issue in the present matter, W. Va.Code § 27–6A–3. Both statutes involve determinations as to whether a person has committed an act of violence. Under W. Va.Code § 62–1C–1 a person may be denied bail—freedom from incarceration—if his or her acts involve acts of violence, and under W. Va.Code § 27–6A–3, an incompetent defendant may be committed if his or her acts involve acts of violence. Furthermore, it appears from the pertinent language of each statute, that each statute shares a similar purpose: to protect the public from harm.

■ We find the similarities between *Spaulding* and the case at bar warrant applying the reasoning of *Spaulding* to the evaluation of W. Va.Code § 27–6A–3. In the present matter, the crimes at issue are third degree sexual assault against a child and sexual abuse by a custodian. As with first degree sexual assault, the crimes charged in the case at bar may be committed without forcible compulsion. Forcible compulsion was not alleged in this case. However, as we recognized in *Spaulding*, sexual assaults on children—the most vulnerable members of society[15]—result in severe emotional and psychological harm. *See People v. Benton,* 294 Mich.App. 191, 817 N.W.2d 599, 609 (2011) ("Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences."). Following our reasoning in *Spaulding*, we must conclude that physical, psychological, and emotional harm all constitute violence within the meaning of W. Va.Code § 27–6A–3 when the charged crime involves children. Because third degree sexual assault and sexual abuse by a custodian are crimes that cause severe emotional and psychological harm to children, the acts involved in such crimes

constitute "acts of violence" within the meaning of W. Va.Code § 27–6A–3. We believe this decision comports with the Legislature's purpose of protecting the public.

George K. asserts in his brief that the child in this case did not suffer physical harm, but there is no evidence in the appendix record to that effect. There is also no evidence in the record as to whether the child is currently suffering emotional or psychological harm as a result of the alleged sexual encounters with George K., nor is there evidence describing the long-term effects the sexual abuse may have on the child. Nevertheless, our focus is not limited to the facts surrounding this particular child victim's past and whether she has suffered or will suffer physical, emotional, or psychological harm; our focus is on the Legislature's forward-looking purpose to protect all children from the exposure to the physical, emotional, and psychological harm attendant to sexual abuse. Even if it was established that the child in this case did not and will not suffer any harm as a result of George K.'s acts, it does not follow that another child subject to a similar encounter in the future would also not suffer severe harm. Indeed, we believe the contrary to be true. As we have previously stated, "There can be little debate that sexual assault of a minor is profoundly tragic. Children are the most vulnerable of victims, suffering traumatic and frequently life-long physical and emotional damage." *State v. Goff,* 203 W.Va. 516, 522, 509 S.E.2d 557, 563 (1998) (internal quotation omitted).

■ We now hold that an "act of violence against a person" within the meaning of W. Va.Code § 27–6A–3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children. Accordingly, we further hold that third degree sexual assault pursuant to W. Va.Code § 61–8B–5(a)(2) (2000) is a crime that involves an "act of violence against a

---

15. *State v. Hargus,* 232 W.Va. 735, 744, 753 S.E.2d 893, 902 (2013) ("[C]hildren [are] the most vulnerable members of society."). We note that while the children at issue in *Spaulding* were younger than the child at issue in the pres-

ent case, the sex crimes at issue have the potential of resulting in severe physical and/or psychological harm to a child incapable of consent regardless of whether that child is five, seven or fifteen years old.

person" within the meaning of W. Va.Code § 27–6A–3 because it causes physical harm and severe emotional and psychological harm to children. Additionally, we hold that sexual abuse by a parent, guardian, custodian, or a person in a position of trust to a child pursuant to W. Va.Code § 61–8D–5 (2005) is a crime that involves an "act of violence against a person" within the meaning of W. Va.Code § 27–6A–3 because it causes physical harm and severe emotional and psychological harm to children. Because George K. has been charged with crimes that involve an act of violence, the circuit court correctly ordered his commitment pursuant to W. Va. Code § 27–6A–3(h).

■ Following our holdings in this case, we reiterate that the determination of whether a charged crime involves an act of violence under W. Va.Code § 27–6A–3 is only a threshold inquiry. With regard to incompetent defendants who are charged with a crime involving an act of violence pursuant to W. Va.Code § 27–6A–3(h), the duty of the court is not to "lock them up and throw away the key." Instead, under W. Va.Code § 27–6A–3(h) the condition of those defendants must at a minimum be reviewed annually, and reports regarding their conditions must be submitted to and considered by the court. W. Va.Code § 27–6A–3(h). Additionally, W. Va.Code § 27–6A–3(h)–(i) require that an incompetent defendant be committed to the least restrictive environment necessary to treat the defendant while simultaneously providing for the protection of the public.

## IV.

### CONCLUSION

For the reasons set forth above, this Court affirms the circuit court's order entered February 21, 2012, finding George K. incompetent to stand trial, committing him to a mental health facility, and maintaining

jurisdiction over him for a period of fifty years or until he regains competency and the criminal charges reach resolution.

Affirmed.

Justice KETCHUM dissents and reserves the right to file a separate opinion.

Justice KETCHUM, dissenting:

The circuit court committed George K. to a mental health facility for fifty years and ruled that it could maintain jurisdiction over him during this time.[1] The circuit court found that the offenses he was charged with violating, third degree sexual assault pursuant to W.Va.Code § 61–8B–5, and sexual abuse by a custodian pursuant to W.Va.Code § 61–8D–5, involved "an act of violence against a person."

George K. has an IQ of 60. He was charged with having sexual intercourse on two occasions with the fifteen-year-old daughter of his girlfriend. She was six weeks from the age of consent when the sexual intercourse occurred. There is no allegation that the sexual intercourse between George K. and the fifteen-year-old girl involved the use of force, threats, or physical violence. It was consensual except for the fact that she was six weeks away from the age of consent. Because neither of the offenses George K. was charged with violating requires violence as an element of the offense, and because there was no actual evidence of physical violence or forcible compulsion, George K. argues that the circuit court erred by ruling that the charged offenses involved "an act of violence against a person" and by committing him to a mental health facility for a fifty years.

The phrase "an act of violence against a person" is contained in W.Va.Code § 27–6A–3(h) which states, in part:

If at any point in the proceedings the defendant is found not competent to stand

---

1. Fifty years is the maximum period of confinement George K. would have faced had he been convicted on all of the charges against him. If George K. attains competency during this fifty year term, he can be made to stand trial on the charges against him. W.Va.Code § 27–6A–3(h) provides, in part, that "[a] defendant shall re-

main under the court's jurisdiction until the expiration of the maximum sentence *unless the defendant attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge."* (Emphasis added).

trial and is found not substantially likely to attain competency, and *if the defendant has been indicted or charged with a misdemeanor or felony in which the misdemeanor or felony does involve an act of violence against a person,* then the court shall determine on the record the offense or offenses of which the person otherwise would have been convicted, and the maximum sentence he or she could have received.

(Emphasis added).

The phrase "an act of violence against a person" is unambiguous and should be afforded its plain meaning. *Black's Law Dictionary* defines "violent offense" as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." *Black's Law Dictionary* at 1188 (9th ed.2009). This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.").

Neither of the charged offenses, third degree sexual assault and sexual abuse by a custodian, include "an act of violence" as an element of the offense. W.Va.Code § 61–8B–5(a)(2) states:

(a) A person is guilty of sexual assault in the third degree when: ...

(2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

W.Va.Code § 61–8D–5(a) states:

(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

Because these offenses do not require an act of violence and because there is no allegation that George K. used *any* forcible compulsion, much less extreme physical force, forcible rape, or assault and battery with a dangerous weapon, the circuit court should have ruled that the charged offenses did not involve "an act of violence against a person."

The Legislature has addressed "violence" in the context of sexual offenses. The Sex Offender Registration Act, W.Va.Code § 15–12–2(i), states that a "sexually violence offense" means:

(1) Sexual assault in the first degree as set forth in section three, article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction;

(2) Sexual assault in the second degree as set forth in section four, article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction;

(3) Sexual assault of a spouse as set forth in the former provisions of section six, article eight-b, chapter sixty-one of this code, which was repealed by an Act of the Legislature during the 2000 legislative ses-

sion, or of a similar provision in another state, federal or military jurisdiction;

(4) Sexual abuse in the first degree as set forth in section seven, article eight-b, chapter sixty-one of this code or of a similar provision in another state, federal or military jurisdiction.

The Legislature did not include third degree sexual assault or sexual abuse by a custodian in its list of "sexually violent offenses."

The circuit court and the majority opinion rely largely on this Court's holding in *State ex rel. Spaulding v. Watt*, 188 W.Va. 124, 423 S.E.2d 217 (1992). In *Spaulding*, the State sought to compel the trial court to revoke the defendant's post-conviction bail after he was convicted of nine counts of first degree sexual assault against his five-year-old stepdaughter and his seven-year-old stepson. The issue in *Spaulding* was the meaning of "violence to a person" within the context of a post-conviction bail statute, W.Va.Code § 62–1C–1(b). The Court determined that

the word "violence" in our post-conviction bail statute is not limited by the adjective "physical." There can be no dispute that even in the absence of any significant physical trauma, sexual assaults on young children result in severe emotional and psychological harm.

188 W.Va. at 126, 423 S.E.2d at 219. The Court in *Spaulding* held in Syllabus Point 1 that "[t]he offense of first degree sexual assault under W.Va.Code, 61–8B–3(a)(2) (1984), involves violence to a person and is, therefore, subject to the provisions of W.Va.Code, 62–1C–1(b) (1983), with regard to post-conviction bail."

The Court's holding in *Spaulding* is clearly distinguishable from the present case. *Spaulding* dealt with the first degree sexual assault of a five-year-old and a seven-year-old. The present case involves third degree sexual assault and sexual assault by a custodian involving a fifteen-year-old who stated that the sexual intercourse was consensual. Considering *Spaulding* and the Sex Offender Registration Act, W.Va.Code § 15–12–2(i), together, both this Court and the Legislature agree that first degree sexual assault involves an act of violence against a person. Because George K. was charged with third

degree sexual assault and sexual assault by a custodian, this Court's ruling in *Spaulding* is not applicable to the present case.

Finally, as the majority noted, if the circuit court had ruled that the charged offenses did not involve "an act of violence against a person," George K. nevertheless could have been committed pursuant to an involuntary civil commitment. If the circuit court had determined that the charged offenses did not involve "an act of violence against a person," it would have proceeded under W.Va.Code § 27–6A–3(g), which provides:

(g) If at any point in the proceedings the defendant is found not competent to stand trial and is found not substantially likely to attain competency and if the defendant has been indicted or charged with a misdemeanor or felony *which does not involve an act of violence against a person, the criminal charges shall be dismissed. The dismissal order may, however, be stayed for twenty days to allow civil commitment proceedings to be instituted by the prosecutor pursuant to article five* [§ 27–5–1 et seq.] *of this chapter.* The defendant shall be immediately released from any inpatient facility unless civilly committed.

(Emphasis added). As set forth in this statute, the method for procuring an involuntary civil commitment is set forth in W.Va.Code §§ 27–5–1 to –11. Specifically, W.Va.Code § 27–5–2(a) states that:

(a) Any adult person may make an application for involuntary hospitalization for examination of an individual when the person making the application has reason to believe that the individual to be examined is addicted, as defined in section eleven, article one of this chapter, or is mentally ill and, because of his or her addiction or mental illness, the individual is likely to cause serious harm to himself, herself or to others if allowed to remain at liberty while awaiting an examination and certification by a physician or psychologist.

An individual can remain involuntarily committed as long as the person poses a danger to himself or to others. *See* W.Va.Code § 27–5–4(k).

Based on all of the foregoing, I respectfully dissent.