IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

**FILED**

**April 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0981

STATE OF WEST VIRGINIA EX REL. SCOTT R. SMITH,
PROSECUTING ATTORNEY OF OHIO COUNTY, WEST VIRGINIA,
Petitioner

v.

HONORABLE DAVID J. SIMS, JUDGE OF THE FIRST JUDICIAL CIRCUIT,
AND J.Y.,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

Submitted: February 10, 2015
Filed: April 9, 2015

Patrick Morrisey, Esq.
Attorney General
Christopher S. Dodrill, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Scott R. Smith

Justin M. Hershberger, Esq.
Hershberger Law Office
Wheeling, West Virginia
Attorney for J.Y.

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.  "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syl. Pt. 5, *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992).

2.  "In determining whether a misdemeanor or felony involves an 'act of violence against a person' pursuant to W.Va. Code § 27-6A-3 (2007), a court's analysis is not limited by whether an 'act of violence against a person' is an element of the offense." Syl. Pt. 1, *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014).

3.  "An 'act of violence against a person' within the meaning of W.Va. Code § 27-6A-3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children." Syl. Pt. 2, *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014).

i

4. Possession of a deadly weapon on the premises of an educational facility with the express intent to intimidate another student "involves an act of violence against a person" as set forth in West Virginia Code § 27-6A-3 (2013).

LOUGHRY, Justice

The petitioner, Scott R. Smith, Prosecuting Attorney of Ohio County, West Virginia, invokes this Court's original jurisdiction and seeks a writ of prohibition to prevent the respondent, the Honorable David J. Sims, Judge of First Judicial Circuit, from dismissing a juvenile petition against the respondent juvenile, J.Y.,[1] a twelve-year- old boy charged with the offense of possession of a deadly weapon on the premises of an educational facility as set forth in West Virginia Code § 61-7-11a(b)(1) (2014). By order entered March 6, 2014, the circuit court dismissed the petition pursuant to West Virginia Code § 27-6A-3(g) (2013), finding that J.Y. was not competent to stand trial and that the charged offense did not "involve an act of violence against a person." The petitioner asserts that the circuit court erred in finding that the charged offense did not involve an act of violence against a person given the potential for harm to other students that existed as a result of J.Y.'s actions, especially in light of his admission that he intended to use the deadly weapon–a semi-automatic pistol–to intimidate another student. Upon consideration of the parties' briefs and arguments, the submitted record, and the pertinent authorities, we find sufficient grounds to warrant issuance of the writ. Accordingly, the requested writ is granted.

---

[1]The juvenile respondent in this case will be identified by his initials pursuant to Rule 40(e) of the Rules of Appellate Procedure.

1

## I. Factual and Procedural Background

On September 13, 2013, J.Y. took a semi-automatic pistol to his middle school. The gun was discovered after J.Y. was questioned by the principal who had learned from another student that J.Y. had shown .25-caliber ammunition to other children outside of a local volunteer fire department the previous evening. The principal asked J.Y. about the ammunition, and he admitted to having individual rounds in his pockets as well as loaded magazines in his school locker. The principal then went to J.Y.'s locker and found the magazines and the semi-automatic pistol in J.Y.'s backpack. The pistol was loaded with three rounds in the magazine and one in the chamber ready to be fired. Another magazine was loaded with seven rounds. Thereafter, J.Y. was questioned by the police.

J.Y. told a police officer that he had taken the pistol from his grandparents' house and brought it to school to scare a girl who had been bullying him. J.Y. was immediately suspended from school and taken to a juvenile detention center where he was placed on suicide watch because he also told the officer that he had the gun "to scare himself" and "he was being extremely emotional." The following day, J.Y. was charged by a juvenile petition with the offense of possession of a deadly weapon on the premises of an educational facility. Following the filing of the petition, J.Y. waived his right to a

2

preliminary hearing. Subsequently, by agreed order, J.Y. underwent a complete psychological and psychiatric evaluation.[2]

A forensic psychologist evaluated J.Y. on December 4, 2013. The psychologist reported that J.Y. had a Full Scale IQ of seventy, which is equivalent to a nine-year-old child, and was functioning at about the third grade level. He further stated that J.Y. did not have "a rational, as well as factual, understanding of proceedings against him" and concluded that J.Y. was not competent to stand trial "due to his limited intellectual abilities and high distractability." The psychologist also determined that J.Y.'s competency "is not easily restored or improved" and that "one or two years of education" would be required for him to understand the proceedings. Thereafter, J.Y. filed a "Motion to Dismiss" and a "Motion for Finding of Incompetent to Stand Trial and Not Likely to Regain Competency" pursuant to West Virginia Code § 27-6A-3.

The matter came before the circuit court on March 6, 2014. It was undisputed that a qualified forensic evaluator had determined, pursuant to West Virginia Code § 27-6A-2(c) (2013),[3] that J.Y. was not competent to stand trial and was not "substantially likely to

[2]*See* W.Va.R.Juv.Proc. 26 (providing for pre-adjudicatory competency evaluations of juveniles subject to pending petition in accordance with procedures set forth in W.Va. Code §§ 27-6A-2 and 27-6A-4 (2013)). *See also* W.Va. Code § 27-6A-9 (2013).

[3]West Virginia Code § 27-6A-2(c) states in relevant part: "If it is the qualified forensic evaluator's opinion that the defendant is not competent to stand trial, the report shall

3

attain competency within the next three months." *Id.* Because J.Y. was deemed incompetent to stand trial, the only issue for the circuit court to determine was how to proceed with respect to the pending criminal charge. Such determination depends on whether the charged offense "involve[d] an act of violence against a person." In that regard, West Virginia Code § 27-6A-3(g) provides:

> If at any point in the proceedings the defendant is found not competent to stand trial and is found not substantially likely to attain competency and *if the defendant has been indicted or charged with a misdemeanor or felony which **does not involve** an act of violence against a person, the criminal charges shall be dismissed.* The dismissal order may, however, be stayed for twenty days to allow civil commitment proceedings to be instituted by the prosecutor pursuant to article five [§§ 27-5-1 et seq.] of this chapter. The defendant shall be immediately released from any inpatient facility unless civilly committed.

*Id.* (emphasis added). In contrast, West Virginia Code § 27-6A-3(h) states:

> If at any point in the proceedings the defendant is found not competent to stand trial and is found not substantially likely to attain competency, and *if the defendant has been indicted or charged with a misdemeanor or felony in which the misdemeanor or felony **does involve** an act of violence against a person, then the court shall determine on the record the offense or offenses of which the person otherwise would have been convicted, and the maximum sentence he or she could have received.[4] A defendant shall remain under the court's jurisdiction until the expiration of the maximum sentence unless*

_____

state whether the defendant is substantially likely to attain competency within the next three months[.]"

[4]West Virginia Code § 61-7-11a(b)(3) provides for a maximum sentence of ten years in prison for the offense of possession of a deadly weapon on the premises of an educational facility.

*the defendant attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge.* The court shall order the defendant be committed to a mental health facility designated by the department that is the least restrictive environment to manage the defendant and that will allow for the protection of the public. Notice of the maximum sentence period with an end date shall be provided to the mental health facility. The court shall order a qualified forensic evaluator to conduct a dangerousness evaluation to include dangerousness risk factors to be completed within thirty days of admission to the mental health facility and a report rendered to the court within ten business days of the completion of the evaluation. The medical director of the mental health facility shall provide the court a written clinical summary report of the defendant's condition at least annually during the time of the court's jurisdiction. The court's jurisdiction shall continue an additional ten days beyond any expiration to allow civil commitment proceedings to be instituted by the prosecutor pursuant to article five [§§ 27-5-1 et seq.] of this chapter. The defendant shall then be immediately released from the facility unless civilly committed.

*Id.* (emphasis and footnote added).

Upon consideration, the circuit court found that the offense with which J.Y. was charged did not involve an act of violence against a person because the weapon was not seen by anyone prior to its discovery, and J.Y. never brandished the gun nor "made any specific threats to, or against, anyone." The circuit court concluded "that absent any use or threatened use of physical force against a person by [J.Y.], the alleged offense . . . is not an offense [that] constitutes "an act of violence against a person." Accordingly, the circuit court

granted J.Y.'s requested relief and dismissed the juvenile petition against him. On September 30, 2014, the petitioner filed this petition for a writ of prohibition.

## II. Standard for Issuance of a Writ of Prohibition

The State has a limited right to seek a writ of prohibition in a criminal case. As this Court explained in syllabus point five of *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992),

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.[5] (footnote supplied)

---

[5]J.Y. urges this Court to dismiss this petition seeking a writ of prohibition as untimely. We decline to do so because the petitioner did in fact immediately file an appeal of the March 6, 2014, dismissal order with this Court on March 19, 2014. However, by order dated September 17, 2014, this Court dismissed the appeal stating,

> Rule 1(d) of the West Virginia Rules of Juvenile Procedure provides: "Juveniles charged with delinquency or status offenses are given the same rights as adults charged with criminal offenses, and in some instances they are afforded more protection." W.Va. Code § 58-5-30 grants the State the right to appeal a criminal case only when the indictment is held bad or insufficient. Since W.Va. Code § 58-5-30 does not provide that the State has the right to appeal the dismissal of a juvenile delinquency petition, this Court finds that there is no

6

In this instance, the petitioner contends that the circuit court abused its legitimate powers when it ruled that the charged offense did not "involve an act of violence against a person" as set forth in West Virginia Code § 27-6A-3. We review *de novo* a circuit court's legal rulings and statutory interpretations. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138. 459 S.E.2d 415 (1995). With these standards in mind, we consider whether the requested writ of prohibition should be granted.

## III. Discussion

The sole issue before this Court is whether J.Y. was charged with an offense that "involve[d] an act of violence against a person" within the meaning of West Virginia Code § 27-6A-3. At the time the matter came before the circuit court, the phrase "act of violence against a person" was not defined by any statute or case law. Looking for guidance on this issue, the circuit court ultimately relied upon West Virginia Code § 49-5-10(h) (2014),[6] a statute defining the phrase "offense of violence" as "an offense which involves the

> constitutional or statutory appeal allowed, and that this Court does not have jurisdiction to consider this matter on appeal. *The appeal is dismissed without prejudice in order to enable the petitioner to re-file this matter as a petition for a writ of prohibition.*

(emphasis added). Following entry of our order, the petitioner promptly filed this petition for a writ of prohibition.

[6]This statute concerns the waiver and transfer of juvenile defendants to adult criminal jurisdiction.

7

use or threatened use of physical force against a person." Based upon this statutory definition, the court concluded that J.Y. did not commit "an act of violence against a person" because he did not use physical force against anyone or threaten the use of physical force.

Subsequent to the circuit court's dismissal of the juvenile petition at issue, this Court had occasion in *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014), to interpret the phrase "involve[d] an act of violence against a person" within the meaning of West Virginia Code § 27-6A-3. In that case, George K., who was thirty-nine years old, was charged with the offenses of third degree sexual assault[7] and sexual abuse by a custodian[8] based on allegations that he had sexual intercourse on two separate occasions with the fifteen-year-old daughter of his live-in girlfriend. The victim was within six weeks of the age of consent, and George K. maintained that she willingly engaged in sexual intercourse with him. Like J.Y., George K. was deemed incompetent to stand trial.[9] Accordingly, the disposition of the charges against George K. hinged on the determination of whether the offenses "involve[d] an act of violence against a person." Even though there was no

---

[7]*See* W.Va. Code § 61-8B-5(a)(2) (2000).

[8]*See* W.Va. Code § 61-8D-5 (2005).

[9]A psychiatric evaluation revealed that George K. had an IQ of sixty and that he did not have the ability to understand the court proceedings and charges against him because of retention-related problems. In addition, he was deemed unable to participate in his defense because of cognitive limitations. It was concluded that George K. was not likely to attain competency in the foreseeable future. *George K.*, 233 W.Va. at 702, 760 S.E.2d at 516.

8

evidence of physical violence or forcible compulsion, the circuit court found that the offenses did involve an act of violence against a person and committed George K. to a mental health facility pursuant to West Virginia Code § 27-6A-3(h).

On appeal, George K. argued that because the sexual conduct he engaged in with the victim was consensual and did not involve the application of force, threats or physical violence and because force, threats, compulsion or physical violence were not elements of the charged offenses, his actions were not violent within the meaning of West Virginia Code § 27-6A-3. The State disagreed, maintaining that the charged offenses did "involve an act violence against a person" as set forth in the statute because of the great potential for physical harm and long-term psychological damage to the child victim.

Our analysis in *George K.* began with the recognition that the meaning of "violence," as set forth in West Virginia Code § 27-6A-3, is ambiguous due to the absence of an explicit statutory definition. In accordance with our rules of statutory construction, we proceeded to ascertain the legislative intent behind the enactment of the statute. Determining that the statute has a dual purpose of treating individuals suffering from mental illnesses and protecting the public,[10] we concluded that "the reason for determining whether an act of

---

[10]*See* Syl. Pt. 4, in part, *State v. Smith*, 198 W.Va. 702, 482 S.E.2d 687 (1996) ("The purpose of West Virginia Code § 27-6A-3 (Supp.1996) is not to punish someone suffering a mental illness; rather, it is to treat the illness and protect society.").

violence against a person has occurred is prospective due to the risk of recurrence." *George K.*, 233 W.Va. at 708, 760 S.E.2d at 522. In other words, "examination of crimes that have allegedly been committed indicates whether the incompetent defendant poses a *future* risk of harm." *Id.* We further explained:

> Logic dictates that if the Legislature intended these subsections to provide for the protection of the public, then a crime that does not involve an act of violence against a person that therefore allows for the release from supervision of a person deemed incompetent to stand trial pursuant to W.Va. Code § 27-6A-3(g) must necessarily be a crime that does not indicate that the incompetent defendant poses a future risk of harm to the public. Similarly, if the crime warrants commitment pursuant to W.Va. Code § 27-6A-3(h), then the incompetent defendant poses a future risk of harm to the public. Therefore, an "act of violence against a person" within the meaning of W.Va. Code § 27-6A-3 is an act that indicates an incompetent defendant poses a future risk of harm to the public.

233 W.Va. at 708, 760 S.E.2d at 522.

We also determined in *George K.* that it would be contrary to the clear purpose of West Virginia Code § 27-6A-3 to find that only those crimes that list "an act of violence" as an element satisfy the "act of violence against a person" requirement of the statute. Observing that such a strict construction would exclude many crimes, like battery, which involve violence but do not explicitly list the same as an element of the offense, we held that "in determining whether a misdemeanor or felony involves an 'act of violence against a person' pursuant to W.Va.Code § 27-6A-3 (2007), a court's analysis is not limited by

10

whether an 'act of violence against a person' is an element of the offense." *George K.*, 233 W.Va. at 701, 760 S.E.2d at 515, syl. pt. 1.

Addressing the heart of the parties' arguments in *George K.*, we held in syllabus point two that "an 'act of violence against a person' within the meaning of W.Va. Code § 27-6A-3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children." 233 W.Va. at 701, 760 S.E.2d at 515. Although there was no evidence that George K.'s victim suffered physical, psychological or emotional harm, we were nonetheless compelled to conclude that the charged offenses involved "an act of violence against a person" given the legislative purpose of protecting the public which underlies the enactment of West Virginia Code § 27-6A-3. As we explained, "[e]ven if it was established that the child in this case did not and will not suffer any harm as a result of George K.'s acts, it does not follow that another child subject to a similar encounter in the future would also not suffer severe harm." *George K.*, 233 W.Va. at 711, 760 S.E.2d at 525.

In this original proceeding in prohibition, the petitioner argues that the circuit court's decision to dismiss the juvenile petition was fundamentally flawed because of its failure to focus on the potential for harm inherent in J.Y.'s actions. The petitioner contends that under the analysis employed in *George K.*, J.Y. clearly committed an offense involving

11

an act of violence against a person. Rather than focusing on the things that J.Y. did not do with the gun, the petitioner asserts that the circuit court should have recognized the risk of harm to other students that existed, especially given J.Y.'s admission that he was planning to use the gun to scare the girl who had been bullying him.

J.Y. maintains, however, that the circuit court did not abuse its legitimate powers when it dismissed the juvenile petition against him pursuant to West Virginia Code § 27-6A-3(g). J.Y. asserts that the petitioner's reliance upon *George K.* is misplaced. He argues that the case is easily distinguishable because it dealt exclusively with sexual offenses against children.[11] Noting that sexual offenses by their nature involve interaction with an identifiable victim, J.Y. acknowledges that the risk of severe emotional or psychological harm is great in those instances due to the victim's memory of what happened. He reasons that the same is not true in his case because no other student actually saw the gun before it was discovered. Accordingly, J.Y. concludes that there is no basis to classify the charge against him as an offense involving an act of violence against a person. We disagree.

---

[11]Although J.Y. does not contend that *George K.* is inapplicable because the opinion was issued subsequent to the circuit court's dismissal of the juvenile petition against him, we nonetheless note that "[t]he Supreme Court of Appeals of West Virginia, like all courts in the country, adheres to the common law principle that, '[a]s a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases.' *Crowe v. Bolduc*, 365 F.3d 86, 93 (1st Cir.2004)." *Caperton v. A.T. Massey Coal Co., Inc.*, 225 W.Va. 128, 156, 690 S.E.2d 322, 350 (2009).

12

By focusing on the fact that no student saw him with the gun and concluding that there was no "identifiable victim," J.Y. misinterprets our decision in *George K.* As set forth above, we made clear that the statutory purpose of West Virginia Code § 23-6A-3– protecting the public– requires consideration of whether the incompetent defendant poses a future risk of harm. As such, the fact that J.Y. never brandished the weapon nor made any specific threats to or against anyone is of no consequence. As we explained in *George K.*, it matters not whether someone suffered actual harm as a result of the events that led to the charged offense; rather, the question is whether the actions of the incompetent defendant pose a risk of physical, emotional or psychological harm to children. 233 W.Va. at 711, 760 S.E.2d at 525. In this case, it is clear the actions of J.Y. posed a significant risk of harm to the other students as well as school personnel. It was only because of timely intervention by the principal that a potential tragedy was avoided.

As the record indicates, on September 13, 2013, J.Y. entered his middle school with a loaded gun ready to be immediately fired. He also possessed a significant amount of additional ammunition. By his own admission, he had an intended target and a clear purpose for bringing the gun to school. He readily admitted to the police that he was going to use the gun to scare the girl who had been bullying him. By luck or happenstance, school personnel were alerted at eight o'clock that morning of J.Y.'s possession and display of

13

ammunition to other children the previous evening. This information caused the principal to take immediate action that led to the gun being discovered very early in the school day.

School personnel were aware of the bullying incidents between J.Y. and his intended target, who is described in the record as being physically larger than J.Y. According to the police report, a police officer on duty at the school had intervened in one of the bullying incidents and had been "making checks" on J.Y. since that time. J.Y. revealed to the forensic psychologist who examined him that he believed that "all the school did was make the bullying worse." J.Y.'s clearly expressed intention to use the deadly weapon to scare the girl who had been bullying him, coupled with his belief that the bullying incidents were escalating as a result of the intervention by school personnel, makes it more likely than not that he would have brandished and possibly fired the gun, if more time had elapsed before it was discovered by the principal.

In addition, it is noted that the police report indicates that the principal had to stop J.Y. from trying to reach for his backpack as his locker was being searched. This fact is very telling of the risk posed by J.Y.'s possession of the deadly weapon. Whether J.Y. was going to pull the gun out of his backpack to use it or simply give it to the principal, or whether he was merely trying to further conceal it, the potential for harm is obvious.

14

In making it a crime to possess a deadly weapon on the premises of an educational facility, the Legislature recognized the potential for harm that exists when firearms are merely accessible to children. When a student brings a gun to school with the express intention of using it to intimidate another child, the likelihood that other students will suffer some type of physical or psychological harm becomes a virtual certainty unless someone happens to intervene. Accordingly, based on all the above, we find that J.Y.'s actions on September 13, 2013, indicate that he poses a risk of physical harm and severe emotional and psychological harm to children and, therefore, he committed an offense involving an act of violence against a person within the meaning of West Virginia Code § 23-6A-3. To find otherwise, given these particular circumstances, would defy logic and common sense.[12] Consequently, we now hold that possession of a deadly weapon on the

---

[12]Other jurisdictions have also recognized the risks posed by the possession of firearms or other deadly weapons on school property. *See In re Latasha W.*, 70 Cal.Rptr.2d 886, 887 (Cal.Ct.App. 1998) (holding random metal detector weapon searches of high school students constitutional, finding "need of schools to keep weapons off campuses is substantial" because "[g]uns and knives pose a threat of death or serious injury to students and staff"); *State v. J.A.*, 679 So.2d 316, 320 (Fla. Dist. Ct. App. 1996) (concluding administrative search leading to discovery of gun in student's jacket constitutional as "incidences of violence in our schools have reached alarming proportions"); *People v. Pruitt*, 662 N.E.2d 540, 546 (Ill.App.Ct. 1996) (finding reasonable search and seizure of firearms possessed by two students, stating, "Judges cannot ignore what everybody else knows: violence and the threat of violence are present in the public schools. . . . School children are harming each other with regularity."); *Moore v. Appleton City R-II School*, 232 S.W.3d 642, 647 (Mo.Ct.App. 2007) (affirming suspension of student for violating school's weapons policy, noting trial court's observation that "[i]n today's climate of students being taken hostage, shot at and killed, possessing any item on school property that resembles a firearm . . . creates an extremely dangerous situation"); *In the Matter of A.J.C.*, 326 P.3d 1195, 1202 (Or. 2014) (upholding search of youth's backpack as reasonable, observing "[n]o matter

15

premises of an educational facility with the express intent to intimidate another student "involves an act of violence against a person" as set forth in West Virginia Code § 27-6A-3.

Because J.Y. has been deemed incompetent to stand trial and we have now determined that he was charged with an offense involving an act of violence against a person, the requirements of West Virginia Code § 27-6A-3(h) are satisfied thereby entitling the petitioner to the issuance of the requested writ in this matter. However, once again,

> we reiterate that the determination of whether a charged crime involves an act of violence under W.Va. Code § 27-6A-3 is only a threshold inquiry. With regard to incompetent defendants who are charged with a crime involving an act of violence pursuant to W.Va. Code § 27-6A-3(h), the duty of the court is not to "lock them up and throw away the key." Instead, under W.Va. Code § 27-6A-3(h) the condition of those defendants must at a minimum be reviewed annually, and reports regarding their conditions must be submitted to and considered by the court.[13] W.Va. Code § 27-6A-3(h). Additionally, W.Va. Code § 27-6A-3(h)-(i) require that an incompetent defendant be committed to the least restrictive environment necessary to treat the defendant while simultaneously providing for the protection of the public. (footnote supplied)

*George K.*, 233 W.Va. at 712, 760 S.E.2d at 526. *See also* W.Va. Code § 27-6A-5 (2013) (providing procedure for release of incompetent defendant who is no longer mentally ill or

---

where the gun was located, whether it was in youth's immediate possession or not, it presented a danger to students").

[13]By maintaining jurisdiction over J.Y., the circuit court will be able to ensure that he receives whatever treatment is necessary.

does not have significant dangerousness risk factors associated with mental illness to less restrictive environment).

## IV.  Conclusion

For the reasons set forth above, the circuit court exceeded its legitimate powers in dismissing the juvenile petition against J.Y.  Therefore, the petitioner is entitled to relief in prohibition.  Accordingly, the March 6, 2014, dismissal order entered by the circuit court is vacated, and this case is remanded for further proceedings consistent with this opinion.

Writ  granted.