IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

FILED

April 6, 2017

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0012

STATE OF WEST VIRGINIA,
Respondent

v.

SHAWN THOMAS RIGGLEMAN,
Petitioner

Appeal from the Circuit Court of Preston County
The Honorable Lawrance S. Miller, Jr., Judge
Civil Action No. 15-F-6

AFFIRMED

Submitted: February 15, 2017
Filed: April 6, 2017

Claire L. Niehaus, Esq.
Public Defender Corporation
Eighteenth Judicial Circuit
Kingwood, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
David A. Stackpole, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

2.    "The purpose of West Virginia Code § 27-6A-3 (Supp.1996) is not to punish someone suffering a mental illness; rather, it is to treat the illness and protect society." Syl. Pt. 4, in part, *State v. Smith*, 198 W.Va. 702, 482 S.E.2d 687 (1996).

3.    "In determining whether a misdemeanor or felony involves an 'act of violence against a person' pursuant to W.Va. Code § 27-6A-3 (2007), a court's analysis is not limited by whether an 'act of violence against a person' is an element of the offense." Syl. Pt. 1, *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014).

4.    "An 'act of violence against a person' within the meaning of W.Va. Code § 27-6A-3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children." Syl. Pt. 2, *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014).

5.    Distributing and exhibiting material depicting minors engaged in sexually explicit conduct in violation of West Virginia Code § 61-8C-3 (2014) is a crime

i

that "involve[s] an act of violence against a person" within the meaning of West Virginia Code § 27-6A-3(h) (2013) because it derives from and is proximately linked to physical, emotional, and psychological harm to children.

WORKMAN, Justice:

Petitioner Shawn Thomas Riggleman, who was indicted on a felony charge of possession of child pornography in violation of West Virginia Code § 61-8C-3 (2014), was found not competent to stand trial. The question presented in this appeal is whether the crime Petitioner is charged with "involve[s] an act of violence against a person" within the meaning of West Virginia Code § 27-6A-3(h) (2013), so that he would remain under the jurisdiction of the Circuit Court of Preston County until the expiration of the maximum sentence. The circuit court answered that question in the affirmative, and we agree.

## I. FACTUAL AND PROCEDURAL HISTORY

In March 2015, a grand jury indicted Petitioner on one felony count of "Distributing and Exhibiting Material Depicting Minors Engaged in Sexually Explicit Conduct" in violation of West Virginia Code § 61-8C-3. Petitioner was accused of electronically obtaining 100 or more pictures and videos via the internet that depicted pre-teen children engaged in sexual explicit conduct. West Virginia Code § 61-8C-3, provides, in pertinent part:

> (a) Any person who, knowingly and willfully, sends or causes to be sent or distributes, exhibits, possesses, electronically accesses with intent to view or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony.
>
> . . . .

1

(c) Any person who violates the provisions of subsection (a) of this section when the conduct involves more than fifty but fewer than six hundred images shall, upon conviction, be imprisoned in a state correctional facility for not less than two nor more than ten years or fined not more than $5,000, or both.

(d) Notwithstanding the provisions of subsections (b) and (c) of this section any person who violates the provisions of subsection (a) of this section when the conduct involves six hundred or more images or depicts violence against a child or a child engaging in bestiality shall, upon conviction, be imprisoned in a state correctional facility for not less than five nor more than fifteen years or fined not more than $25,000, or both.

The circuit court ordered a forensic examination to determine Petitioner's competency to stand trial. It was initially decided that Petitioner was not competent, but might attain competency through restoration training. Petitioner underwent restoration training at Sharpe Hospital in Weston, West Virginia, for six months. In November 2015, a psychiatrist submitted his report to the circuit court that indicated Petitioner was not competent, and was unlikely to be restored to competency within the next three months. Petitioner did not dispute the psychiatrist's report.

The circuit court held a hearing regarding Petitioner's competency and by order dated December 7, 2015, concluded that Petitioner's alleged crime – attaining and viewing images of children engaged in sexual acts via his computer – was a crime involving "an act of violence against a person" pursuant to West Virginia Code § 27-6A-3(h). The circuit court acknowledged the lack of West Virginia case law addressing this

2

specific question; it relied upon *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512 (2014), to frame the issue as whether downloading and accessing child pornography poses a risk of physical harm, severe emotional harm, or severe psychological harm to children. In addition, citing *Osborne v. Ohio*, 495 U.S. 103 (1990), the circuit court observed that one of the purposes of child pornography laws is to protect children by destroying the market for child pornography.

The circuit court found (1) Petitioner admitted to the police that he affirmatively sought out child pornography on his computer over a five to six month period; (2) the material produced by child pornographers causes continuing harm to the child victims; (3) Petitioner caused, at least incrementally, an increase in the demand for child pornography; and (4) Petitioner's actions have helped lead to severe physical, emotional, and psychological harm to the children depicted in the images and videos that he downloaded. The circuit court ordered that Petitioner remain under its jurisdiction until the expiration of his maximum sentence, or until he attains competency and the charges are resolved, or the court dismisses the charges. *See* W.Va. Code § 27-6A-3(h).

## II. STANDARD OF REVIEW

In this appeal, Petitioner raises one assignment of error. He argues the circuit court erred by finding the crime charged under West Virginia Code § 61-8C-3 involves an act of violence to a person under the meaning of West Virginia Code § 27-6A-3(h). We have held that "[w]here the issue on an appeal from the circuit court is

3

clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. DISCUSSION

### A. Petitioner is Charged with a Felony Crime Involving an Act of Violence

With regard to mentally ill persons charged with crimes, West Virginia Code § 27-6A-3(g) provides, in part, that if "the defendant is found not competent to stand trial and is found not substantially likely to attain competency and if the defendant has been indicted or charged with a misdemeanor or felony which does not involve an act of violence against a person, the criminal charges shall be dismissed." In contrast,

> if the defendant has been indicted or charged with a misdemeanor or felony in which *the misdemeanor or felony does involve an act of violence against a person*, then the court shall determine on the record the offense or offenses of which the person otherwise would have been convicted, and the maximum sentence he or she could have received. A defendant *shall remain under the court's jurisdiction* until the expiration of the maximum sentence unless the defendant attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge. The court shall order the defendant be committed to a mental health facility designated by the department that is the least restrictive environment to manage the defendant and that will allow for the protection of the public.

*Id.* § 27-6A-3(h), in part (emphasis added).

4

In *State v. Smith*, 198 W.Va. 702, 482 S.E.2d 687 (1996), this Court examined West Virginia Code §§ 27-6A-3 and -4, and found that, read in pari materia, the statutes "generally provide a court flexibility in exercising and retaining its jurisdiction up to the maximum sentence period, with consideration given to the current mental state and dangerousness of a person[.]"[1] Syl. Pt. 2, in part, *Smith*, 198 W.Va. at 704, 482 S.E.2d at 689. We held in syllabus point four, in part, that: "The purpose of West Virginia Code § 27-6A-3 (Supp.1996) is not to punish someone suffering a mental

---

[1] In *Smith*, the defendant shot and killed her husband. The circuit court initially determined, based on forensic evaluations, that the defendant was not competent to stand trial. A psychologist later determined that she was competent to stand trial but the prosecuting attorney advised the circuit court that the State did not believe it could prove the criminal intent necessary to secure a conviction. *Id*. at 706, 482 S.E.2d at 691. The circuit court ultimately found the defendant not guilty of second-degree murder by reason of mental illness and ordered her committed to a State mental health hospital. Approximately six and one-half months later, she was released to live with her sister and the release order contained a number of restrictions. *Id*. at 707, 482 S.E.2d at 692.

When a defendant is found not guilty of a criminal charge by reason of mental illness, he or she remains under the court's jurisdiction for the maximum sentence or until discharged by the court. *See* W.Va. Code § 27-6A-4(e), in part ("If the verdict in a criminal trial is a judgment of not guilty by reason of mental illness, the court shall determine on the record the offense or offenses of which the acquitee could have otherwise been convicted, and the maximum sentence he or she could have received. The acquitee shall remain under the court's jurisdiction until the expiration of the maximum sentence or until discharged by the court. The court shall commit the acquitee to a mental health facility designated by the department that is the least restrictive environment to manage the acquitee and that will allow for the protection of the public.").

5

illness; rather, it is to treat the illness and protect society." *Smith*, 198 W.Va. at 704, 482 S.E.2d at 689.[2]

This Court provided a comprehensive discussion of West Virginia Code § 27-6A-3 in *George K.*, wherein the thirty-nine-year-old defendant was charged with third-degree sexual assault and sexual abuse by a parent, guardian, custodian, or a person in a position of trust to a child; the defendant allegedly had sexual intercourse on two occasions with the fifteen-year-old daughter of his live-in girlfriend. Counsel for the State and counsel for the defendant agreed that he was not competent to stand trial. *George K.*, 233 W.Va. at 703, 760 S.E.2d at 517.

In *George K.*, we rejected the defendant's argument that his crimes did not involve acts of violence because the sexual contact with the victim was supposedly consensual. This Court found that the meaning of "violence," as set forth in West Virginia Code § 27-6A-3, was ambiguous due to the absence of a statutory definition. *George K.*, 233 W.Va. at 706, 760 S.E.2d. at 520. We proceeded to ascertain the legislative intent behind the statute, employing common rules of statutory interpretation.

---

[2] *See also State v. Gum*, 234 W.Va. 263, 269, 764 S.E.2d 794, 800 (2014) (recognizing "the hearing sanctioned by West Virginia Code § 27-6A-6 is civil in nature. Instead of seeking retribution or deterrence, our statute is directed at the joint purposes of protecting the public and ensuring appropriate treatment for individuals who are both incompetent and criminally violent. *See* W.Va. Code § 27-6A-3(h). The least restrictive environment is mandated and the potential maximum prison sentence serves as a ceiling, rather than a floor, for the treatment period.").

We held in syllabus point one of *George K.* that: "In determining whether a misdemeanor or felony involves an 'act of violence against a person' pursuant to W. Va. Code § 27-6A-3 (2007), a court's analysis is not limited by whether an 'act of violence against a person' is an element of the offense." 233 W.Va. at 701, 760 S.E.2d at 515. We went on to find the defendant's crimes involved an act of violence against a person within the meaning of West Virginia Code § 27-6A-3 considering the crimes' resultant harm to children. In syllabus point two we held: "An 'act of violence against a person' within the meaning of W. Va. Code § 27-6A-3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children." 233 W.Va. at 701, 760 S.E.2d at 515.

*State ex rel. Smith v. Sims*, 235 W.Va. 124, 772 S.E.2d 309 (2015), was decided along similar lines. In *Sims*, the prosecuting attorney invoked this Court's original jurisdiction and petitioned for a writ of prohibition to prevent a circuit court from dismissing a juvenile petition against a twelve-year-old boy charged with the offense of possession of a deadly weapon on the premises of an educational facility as set forth in West Virginia Code § 61-7-11a(b)(1) (2014); the circuit court found that the juvenile was not competent to stand trial and that the charged offense did not involve an act of violence against a person. *Sims*, 235 W.Va. 124, 126, 772 S.E.2d 309, 311. This Court granted the writ and held that possession of a deadly weapon on the premises of an educational facility with the express intent to intimidate another student was a crime that involved an act of violence against a person within the meaning of West Virginia Code §

7

27-6A-3. In *Sims*, we rejected the argument that because no student saw the juvenile with the gun there could be no "identifiable victim" and, thus, no act of violence. 235 W.Va. at 130, 772 S.E.2d at 315. This Court reasoned that

> [i]n making it a crime to possess a deadly weapon on the premises of an educational facility, the Legislature recognized the potential for harm that exists when firearms are merely accessible to children. When a student brings a gun to school with the express intention of using it to intimidate another child, the likelihood that other students will suffer some type of physical or psychological harm becomes a virtual certainty unless someone happens to intervene.

*Id.* at 131, 772 S.E.2d at 316.

As these cases illustrate, the issue is not whether the incompetent defendant *committed* an act of violence against a person; the language of West Virginia Code § 27-6A-3(h) does not require the State to make that showing. Rather, the relevant inquiry is whether the crime charged *involves* an act of violence against a person.

Turning to the instant case, Petitioner offers a series of unpersuasive arguments. Petitioner attempts to evade the broad pronouncements of *George K.* by arguing the instant case is distinguishable due to Petitioner's lack of contact with the children depicted in the pornographic images. He acknowledges that the defendant in *Sims* had no contact with his intended victim either, but states the risk of a shooting by the defendant bringing a loaded gun to school made that conduct an obvious crime involving violence. Petitioner then retreats to a strict construction of the statutory

8

language set forth in West Virginia Code § 27-6A-3 and urges this Court to revisit and narrow our holdings in this area of law to draw a distinction between crimes which may cause hypothetical "harm" to a potential victim and crimes that involve actual physical force "violence" against a person. Petitioner reasons that, in some respect, most crimes "harm" someone.

Petitioner goes a step further and postulates that the copious amount of pornographic images involving children that can be readily accessed – for free – on the internet today undermines the market analysis employed by the United States Supreme Court in *Osborne*.[3] Petitioner maintains the "economic supply and demand" argument for concluding that he committed a crime of violence is flawed because he never paid to see the images; his "conduct" was sitting at a computer, inputting words and phrases as search terms, and viewing images and videos. Petitioner ultimately asserts this type of conduct does not drive the production of child pornography or cause physical, emotional, or psychological harm to the minors depicted in the images/videos. He essentially argues that the victimization of children here, if any, is too attenuated to constitute the type of harm to children this Court found compelling in *George K*.

---

[3] Petitioner claims an incompetent defendant could never consider what impact he was having on the child pornography market. However, the fact that Petitioner is unable to comprehend or appreciate the devastating effect electronic distribution of child pornography has on the lives of those sexually abused children is simply one of the reasons the circuit court proceeded under a civil hearing sanctioned by West Virginia Code § 27-6A-3. Petitioner's comprehension of his crime is of no consequence to the issue of whether it involves an act of violence against a person.

9

Having framed Petitioners' arguments, we begin our analysis by soundly rejecting the notion that simple possession of child pornography is a victimless crime. In many respects, Petitioner advances the same specious line of reasoning of those who advocate for the repeal of laws criminalizing such behavior. However, "[a] recent report by the U.S. Department of Justice, Criminal Division, Child Exploitation and Obscenity Section noted that child pornography requires child sexual abuse, concluding, '[I]t is simply not possible to disconnect the collection, trade, viewing, and possession of these images [of child pornography] from their production.'" Nicholas Pisegna, *Probable Cause to Protect Children: The Connection Between Child Molestation and Child Pornography*, 36 B.C.J.L. & Soc. Just. 287, 288-89 (2016) (citation omitted). Recognizing this connection in the landmark decision of *New York v. Ferber*, 458 U.S. 747 (1982), the United States Supreme Court upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "intrinsically related" to the sexual abuse of children in two ways. *Id.* at 759. First, as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated; each new publication would cause new injury to the child's reputation and emotional well-being. *Id.* at 759, and n.10. Second, because the traffic in child pornography was an economic motive for its production, the State had an interest in closing the distribution system. "Under either rationale, the speech had what the Court in effect held was a proximate link to the crime from which it came." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 250 (2002). In *Ferber*, the Supreme Court found "[t]he most

expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." 458 U.S. at 760.

Later, in *Osborne*, the Supreme Court ruled that these same interests justified a ban on the *possession* of pornography produced by using children. "Given the importance of the State's interest in protecting the victims of child pornography," the State was justified in "attempting to stamp out this vice at all levels in the distribution chain." 495 U.S. at 110. Justice O'Connor has also observed that the State has an interest in preventing child pornography from being used as an aid in the solicitation of minors. *See Ashcroft*, 535 U.S. at 263 ("Such images whet the appetites of child molesters . . . who may use the images to seduce young children[.]") (citations omitted) (O'Connor, J., concurring in part and dissenting in part).

Moreover, the growing cesspool of noncommercial trading of child pornography in no way minimizes its resulting harm to children.[4] And the United States

---

[4] *See United States v. Grober*, 624 F.3d 592, 616 (3d Cir. 2010) ("Congress considers the transportation of child pornography a particularly egregious crime, and in recent years has expressed its concern that 'the development of the Internet and the digital image . . . ha[s] permitted child pornographers to disseminate their product exponentially, not only across America, but around the world, with a few simple strokes of a keyboard.' 151 Cong. Rec. 4236 (Feb. 24, 2003); *see also* 151 Cong. Rec. 20221 (2005) (finding that 'a substantial interstate market in child pornography exists, including not only a multimillion dollar industry, but also a nationwide network of individuals . . . [who] distribute child pornography with the expectation of receiving other child (continued . . .)

Supreme Court has not retreated from its holding in *Osborne* in light of this tragic reality. To the contrary, in *Paroline v. United States*, 134 S.Ct. 1710 (2014), the Court recognized that "[b]ecause child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.'" *Id.* at 1717. (citation omitted). In *Paroline*, the defendant pled guilty to possession of material involving the sexual exploitation of children and the victim depicted in two of the images sought restitution.[5] The *Paroline* Court was split on how to determine proximate-cause limitations on restitution damages for victims of child pornography. However, the majority aptly found that: "In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 1727.

pornography in return.'). As the District Court recognized, Congress imposed a mandatory minimum for transportation offenses based on its finding that 'the exchanging through trading images contributes to the growth of child pornography and harms increasing numbers of children.' [*United States v.*] *Grober,* 595 F.Supp.2d [382] at 404 [(D.N.J. 2008)].").

[5] Congress enacted 18 United States Code § 2259 (1996), which imposes a mandatory duty on courts to order restitution to victims of federal offenses involving the sexual abuse of children, including the possession of child pornography. *Id.* § 2259(b)(4). It commands that for any such offense, a court "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." *Id.* § 2259(b)(1).

West Virginia also has a restitution provision. *See* W.Va. Code § 61-8C-4 ("In addition to any penalty provided under this article and any restitution which may be ordered by the court under article eleven-a [§§ 61-11A-1 et seq.] of this chapter, the court may order any person convicted under the provisions of this article to pay all or any portion of the cost of medical, psychological or psychiatric treatment of the minor resulting from the act or acts for which the person is convicted, whether or not the minor is considered to have sustained bodily injury.").

This Court has made a similar declaration. In *State v. Shingleton*, 237 W.Va. 669, 790 S.E.2d 505 (2016), we stated emphatically that

> [e]ach use of a minor to create a visual depiction of child pornography constitutes a separate and distinct abuse of that child, and thus represents an individual violation of the statute.[6] . . . [E]ach image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed.

*Id*. at 687, 790 S.E.2d at 523 (quoting *Commonwealth v. Davidson,* 938 A.2d 198, 219 (Pa. 2007)) (footnote added); *see also United States v. Kennedy*, 643 F.3d 1251, 1260 (9th Cir. 2011) (finding individuals depicted in images of child pornography experience "the emotional and psychic pain of knowing that the images are being viewed"); *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007) ("The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . Consumers such as [defendant] who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization. Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home[.]").

---

[6]In *Shingleton*, the defendant was convicted of twenty counts of possession of child pornography in violation of the 2010 version of West Virginia Code § 61-8C-3. At the time, West Virginia Code § 61-8C-3 provided, in part: "Any person who, with knowledge, sends or causes to be sent, or distributes, exhibits, possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony[.]" This Court rejected the defendant's double jeopardy challenge to his multiple convictions under the statute as it existed prior to the significant amendments made by the Legislature in 2014. *Shingleton*, 237 W.Va. at 687, 790 S.E.2d at 523.

Cognizant of this harm, the West Virginia Legislature determined long ago that it was necessary to prohibit possession of child pornography in order to halt sexual exploitation and abuse of children when it enacted West Virginia Code § 61-8C-3. Moreover, the Legislature concluded that certain sex offenders pose a significant risk to society when it directed the courts to sentence those convicted of the crimes enumerated in West Virginia Code § 62-12-26 to a period of supervised release of up to fifty years. Possession of child pornography clearly is a serious offense. It is an unassailable proposition that "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). In addition, the "heinous nature of the acts involved in producing child pornography" encourage and foment such conduct and likely "cause immeasurable emotional and psychological violence to the children involved." *State v. Hargus*, 232 W.Va. 735, 744, 753 S.E.2d 893, 902 (2013).[7]

In light of the principles pronounced above, we conclude that when Petitioner searched the internet to obtain and view images and videos of infants and

---

[7] In *Hargus*, the defendant pled guilty to one count of possession of child pornography and was sentenced to two years of incarceration, a period of thirty years extended supervision, and lifetime registration as a sex offender under West Virginia Code § 62-12-26. *Hargus*, 232 W.Va. at 739, 753 S.E.2d at 897. Subsequently, the circuit court found that he violated a condition of his supervised release by failing to register as a sex offender. As a result, the circuit court modified the defendant's supervised release; he was sentenced to a post-revocation period of incarceration of five years and thereafter ordered to complete the balance of his term of supervised release. *Id.* In *Hargus*, the defendant argued that his additional incarceration was objectively disproportionate to his crime. This Court rejected that argument because while the "crime did not involve sexual contact, his consumption of child pornography made him an active participant in its production and dissemination." *Id.* at 744, 753 S.E.2d at 902.

14

toddlers being raped and sodomized by adult males – presumably for his sexual gratification – he engaged in acts that were not only morally repugnant, they involved an act of violence against a person within the meaning of West Virginia Code § 27-6A-3(h). The critical point here is that those acts demonstrate he poses a risk of physical, emotional or psychological harm to children. *See George K.*, 233 W.Va. at 711, 760 S.E.2d at 525.

This Court does not have to resort to an academic exercise to conjure up some "hypothetical harm" to victims of child pornography; the harsh reality remains that their victimization is so real that "viewing the typical images involved in these cases will flail a judge's soul." *United States v. Campbell*, 738 F. Supp. 2d 960, 962 (D. Neb. 2010); *see also United States v. Fiorella,* 602 F.Supp.2d 1057, 1075 n.8 (N.D. Iowa 2009) ("It is easier to overlook the horrors of child pornography when, as is often the case, the material at issue is not presented to the sentencing judge. For purposes of efficiency and minimization of re-victimization of the children depicted, the government and the defendant will often (and rightly so) enter into stipulations about the number and nature of the photographs at issue. But the horrors of child pornography are real even if those who sit in judgment do not have occasion to view them.").[8] It is "common ground" that

_____

[8] The appendix record before this Court does not contain the pornographic images, but the description of those images is extraordinarily disturbing. During discovery, the State filed six pictures or screen shots of what appears to be a female child engaged in sexually explicit conduct with an adult male. Other file names of the images include titles (continued . . .)

these victims suffer long-term emotional harm as a result of the memories of such victimization and the "knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse[.] . . . Harms of this sort are a major reason why child pornography is outlawed." *Paroline*, 134 S.Ct. at 1726.[9]

For these reasons, Petitioner's theory in this case is irreconcilable with *George K.* and he offers no compelling reason for this Court to depart from that precedent. It is axiomatic that child pornography harms children and "the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998). The defendants who reproduce, distribute, or possess these

such as "pthc – dad & son awesome deep fuck of boy asshole.avi", "(pthc) babyj – tied–anal- force(2)300.avi", and pictures of toddler boys and girls in sexual situations.

[9] As the respondent victim in *Paroline* explained,

> [e]very day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them – at me – when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle. . . . My life and my feelings are worse now because the crime has never really stopped and will never really stop. . . . It's like I am being abused over and over and over again.

134 S.Ct. at 1717.

16

images all play a part in sustaining this tragedy; they are all involved in the substantial network of child pornography that derives from violent sexual acts performed on children.

We therefore find the acts prohibited by West Virginia Code § 61-8C-3 are sufficiently involved with the victimization of the children harmed in the images that they trigger the application of West Virginia Code § 27-6A-3(h). The "end user" of child pornography is not just tenuously involved with the commission of those violent, abhorrent crimes against children; those acts of violence were committed, videotaped, and distributed electronically for his or her use. Simply stated, those acts are so intrinsically related to the abuse of children, they result in criminal prosecution and lengthy terms of incarceration and supervised release. It necessarily follows that those acts are sufficiently involved with the physical, emotional, and psychological harm to children to support the determination that the incompetent defendant poses the risk of dangerousness necessary to satisfy the requirements of West Virginia Code § 27-6A-3(h). *See* Syl. Pt. 2, *George K.*, 233 W.Va. at 701, 760 S.E.2d at 515.

Accordingly, we hold that distributing and exhibiting material depicting minors engaged in sexually explicit conduct in violation of West Virginia Code § 61-8C-3 (2014) is a crime that "involve[s] an act of violence against a person" within the meaning of West Virginia Code § 27-6A-3(h) (2013) because it derives from and is proximately linked to physical, emotional, and psychological harm to children. Thus,

Petitioner poses a sufficient risk of dangerousness to the community to justify the circuit court's exercise of jurisdiction over him pursuant to West Virginia Code § 27-6A-3(h).

## B. Petitioner Remains Under the Circuit Court's Jurisdiction

Having determined that Petitioner was charged with a felony crime involving an act of violence against a person, the requirements of West Virginia Code § 27-6A-3(h) are satisfied. Thus, the circuit court maintains jurisdiction over him "until the expiration of the maximum sentence" unless he "attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge." *Id*.

The circuit court found that the maximum penalty in this case would be a ten-year term of incarceration.[10] The circuit court should remain mindful, however, that our

---

[10] In the indictment, the grand jury found Petitioner "intentionally electronically obtained 100 or more pictures and videos via the internet which depicted pre-teen children engaged in sexual acts, in violation of W.VA. CODE §61-8C-3 (a) and (d), as amended, against the peace and dignity of the State." The parties agreed below that Petitioner was facing up to ten years imprisonment because the *number* of images possessed by him would fall under West Virginia § 61-8C-3(c), not (d). However, a description of the *content* of the images indicates they portray sexual penetration of a minor by an adult which would qualify for the section (d) enhancement for images that depict violence against a child. *See generally, United States v. Myers,* 355 F.3d 1040, 1043-44 (7th Cir. 2004) (holding that sexual penetration of minor by adult would necessarily cause pain and therefore qualify for federal statute violence enhancement, and collecting cases from other circuits); *accord United States v. McLaughlin*, 760 F.3d 699, 704 (7th Cir. 2014). The parties apparently recognized the problem with the indictment (continued . . .)

determination of whether a charged crime involves an act of violence under W.Va. Code § 27-6A-3 is only a threshold inquiry. With regard to incompetent defendants who are charged with a crime involving an act of violence pursuant to W.Va. Code § 27-6A-3(h), the duty of the court is not to "lock them up and throw away the key." Instead, under W.Va. Code § 27-6A-3(h) the condition of those defendants must at a minimum be reviewed annually, and reports regarding their conditions must be submitted to and considered by the court. W.Va. Code § 27-6A-3(h). Additionally, W.Va. Code § 27-6A-3(h)-(i) require that an incompetent defendant be committed to the least restrictive environment necessary to treat the defendant while simultaneously providing for the protection of the public.

*George K.,* 233 W.Va. at 712, 760 S.E.2d at 526.

We reiterate that the purpose of the statutory scheme set forth in West Virginia Code §§ 27-6A-3 to -6 is not to punish persons suffering from mental illness; rather, it is to provide humane care and treatment to the incompetent defendant, and to facilitate rehabilitation with the least restrictive environment. By maintaining jurisdiction over Petitioner, the circuit court also must take necessary precautions to protect the public.

---

not tracking the language found in section (d). In any event, Petitioner did not challenge the sufficiency of the indictment and that issue is not before us.

Similarly, the circuit court failed to recognize that had Petitioner been convicted of the charge, he also would have received up to fifty years of supervised release pursuant to West Virginia Code § 62-12-26 (2014). *See State v. Deel*, 237 W.Va. 600, 607, 788 S.E.2d 741, 748 (2016) (holding supervised release statute, West Virginia Code § 62-12-26, provides additional penalty to be imposed upon person who committed any of enumerated sex offenses set forth therein). Therefore, the maximum sentence Petitioner could receive for violating West Virginia Code § 61-8C-3(a) and (c) would be ten years of incarceration *and* fifty years of supervised release. That issue is not before this Court.

In this case, the parties did not include Petitioner's psychological reports in the appendix record so it is not clear to this Court whether he is likely to ever reoffend or pursue a contact sexual offense against a child. On remand, the circuit court should consider Petitioner's psychological evaluations and sex-offender risk assessment to determine his treatment needs and exercise its broad flexibility to impose the appropriate restrictions necessary to protect the public in accordance with the provisions of West Virginia Code §§ 27-6A-3 to -6.[11]

## IV. CONCLUSION

For the reasons stated above, we affirm the order of the Circuit Court of Preston County.

Affirmed.

---

[11] We recognize that not all child pornography offenders pose the same degree of danger to the community. Of critical importance is the availability of effective sex offender treatment. *See generally*, *United States v. D.M.*, 942 F. Supp. 2d 327, 334 (E.D.N.Y. 2013) ("Particularly useful at sentencing . . . is expert testimony. The evaluation of experts in the fields of psychology, well-trained on unique issues relevant to sex offenders, can be highly relevant in helping the court determine the effectiveness of a particular sentence.").